KUHN, J.
| ¡.The defendant, Josie Y. Morgan, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. The defendant entered a plea of not guilty. (R. 1). Following a trial by jury, the defendant was found guilty as charged. (R. 13,1063). The trial court denied the defendant’s motion for postverdict judgment of acquittal and motion for new trial. The defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.[1] The defendant now appeals, assigning error to the sufficiency of the evidence supporting her conviction, the admission of expert testimony, the violation of her right to present a defense, and prosecutorial misconduct. For the following reasons, we affirm the conviction and sentence.

STATEMENT OF FACTS

On Saturday, December 1, 2007, Jonova Walker, Charles Plain, Lionel Allen, and Andre Turner (the victim) had dinner at the defendant’s residence in Sweetbriar Trailer Park in Zachary. According to trial testimony, sometime after dinner, the defendant, Walker, Allen, and the victim left the defendant’s house while Plain (the defendant’s boyfriend at the time) stayed at the defendant’s trailer for the night. Walker and the defendant were riding in a Honda Accord, and the victim and Allen were riding in a black Geo Storm. After the group made a brief stop at a motel, Walker followed the others as they trav-elled in the Geo Storm on |aScenic Highway.[2] When they turned off Scenic Highway onto Carney Road, the Geo Storm swerved and came to an abrupt stop. Al *821 len and the victim exited the vehicle and began fighting.
According to Walker’s testimony, she and the defendant stepped out of their vehicles, and the defendant grabbed a pipe wrench out of Walker’s vehicle and repeatedly hit the victim in the back of the head. Allen and the defendant continued to beat the victim as he attempted to get off the ground and begged for his life. The victim managed to get up and run from the defendant and Allen, who then got back into the Geo and pursued the victim, with the defendant driving. Walker got back in the Honda Accord and followed them a short distance as they approached the next corner. Walker testified that when she turned the corner behind the Geo, she saw the Geo stopped with its front tire resting on top of the victim’s back. The defendant then backed the vehicle off of the victim’s body, and she and Allen placed his body in the front passenger seat.
Walker followed in the other vehicle as they drove to a nearby wooded area. The defendant and Allen dragged the victim’s body into the woods and set it on fire. On December 3, 2007, the East Feliciana Parish Sheriffs Office received a call regarding the discovery of the victim’s body in a wooded area. According to the autopsy performed on December 5, 2007, the victim suffered multiple lethal blunt-force injuries to the head, fractured ribs, a broken sternum, lacerations on the back of his lungs and liver, internal bleeding, a fractured pelvis, and his entire body was badly burned, including charring from fourth-degree burns.
1 ¿ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE
In assignments of error numbers one, two, and three, the defendant challenges the evidence presented in support of the verdict. Specifically, she contends that the verdict is contrary to the law and evidence (assignment of error number one), that the verdict is not supported by sufficient and competent evidence (assignment of error number two), and that the trial court erred in not granting her postverdict judgment of acquittal (assignment of error number three). The defendant argues that the jury was unable to properly assess Walker and Plain’s credibility since they avoided being confronted with recordings of their prior inconsistent statements by immediately admitting that they previously lied to the police. She further contends that the jury would have, in all likelihood, found that Walker and Plain’s testimony was not credible if it had heard their audiotaped statements. The defendant asserts that the State presented false and untrue testimony that was “cosmetically re-constructed ... to fit the intents and purposes of a lying witness.” The defendant contends that the evidence presented during the trial indicates that Walker was more involved in the events than she revealed. Finally, the defendant asserts that the witness testimony in this case should have been subject to heightened scrutiny due to the history of lies.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 660. In conducting this review, *822 we also must be expressly mindful of Louisiana’s circumstantial evidence test, i.e., “assuming every fact to be proved that the | ¡¡evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 & 00-0895 (La.11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the trier-of-fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Thus, specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the trier-of-fact. State v. Buchanon, 95-0625 (La.App. 1st Cir.5/10/96), 673 So.2d 663, 665, writ denied, 96-1411 (La.12/6/96), 684 So.2d 923.
Dr. Karen Ross, a forensic pathologist with the Jefferson Parish Coroner’s Office at the time of the offense, performed an autopsy on the victim two days after his body was found. She testified that the victim’s cause of death was multiple blunt-force injuries alone or in association with smoke inhalation and thermal injury because the body had been burned after blunt-force injuries were |fisustained. She noted that although the injuries were lethal, the victim could have still been alive at the time he was set on fire because there was a small amount of soot located in his airway indicating that he took in a few breaths, and there was aspiration of some of the gastric materials. She stated that the victim’s entire body was on fire and was largely charred by fourth-degree burns. The victim sustained multiple blunt-force injuries to the head, with at least fifteen different areas of lacerations. Some of the head injuries were sharp or triangulated while others were longer. Blood located beneath the victim’s scalp indicated he was alive when he sustained the head trauma.
Dr. Ross stated that the lacerations and hemorrhage in the victim’s scalp and head area were consistent with being struck with an object like a bat or pipe. The victim also had fractured ribs, a broken sternum, lacerations on the back of both lungs and the liver, internal bleeding and a fractured pelvis. Dr. Ross stated that it would have taken a lot of force in fracturing the large bones and that the bodily injuries were consistent with the victim being hit or run over by a car. The victim was alive when he sustained the bodily injuries. The victim had defensive wounds on two fingers on his right hand consisting of lacerations (one of which went into the nail bed) and the palm of his right hand was relatively spared from some of the thermal injury. Based on his stomach contents, it was estimated that approximately two hours lapsed between the vie- *823 tim’s last meal and the estimated time of his death.
State witness Joshua Jones (the victim’s cousin) saw the victim on the night in question when he was still alive. Jones testified that sometime between 11:00 p.m. and midnight he saw the victim, the defendant, and Walker leave a junkyard on East Flanacher Road in Port Hudson in a black car being driven by Walker.
17At approximately 4:30 p.m. on December 3, Detective Don McKey of the East Feliciana Parish Sheriffs Office, who was the lead detective in the instant case, responded to the wooded area where the victim’s body was located. Detective McKey testified that a piece of paper containing Walker’s name and telephone number was found near the body. His investigation, including statements from Walker, Allen, Jones, Samuel Territo, and Mary Jack (the defendant’s mother) ultimately led him to believe that the victim was with the defendant and Walker during the overnight hours between December 1 and December 2. On December 6, Detective McKey interviewed Walker, the defendant, and Plain. The defendant did not make a statement, and though Walker admitted to being with the defendant and the victim on the night in question, she initially did not provide details surrounding the victim’s murder and denied that the victim or Allen were at the defendant’s trailer that night. Plain indicated that the defendant stayed home with him on the night in question.
The East Feliciana Parish Sheriffs Office requested and received a certified copy of an insurance policy issued April 20, 2006 with the victim as the insured and the defendant as the primary beneficiary. After being arrested for obstruction of justice, Plain provided statements consistent with his trial testimony. Similarly, on November 19, 2008, Walker finally provided statements and information consistent with her trial testimony.
During his trial testimony, Plain admitted that he lied when he first spoke to the police in March 2008 in an effort to protect the defendant. He testified that Allen, the victim, Walker, the defendant, and he were present at the defendant’s trailer that night, and the defendant cooked dinner. Plain stayed at the trailer when the other four individuals left at about 8:00 p.m. He testified that the defendant |8and Walker returned at about 2:00 a.m. Plain further testified that the defendant and Walker were acting “strange” and “jumping” when they returned.
Walker indicated that she and the defendant were close friends and like sisters at the time of the offense. According to her trial testimony, she watched as the defendant and Allen severely beat the victim as he tried to get up off the ground. After the defendant hit the victim with the car and drove him to the wooded area, Walker witnessed the defendant and Allen drag the victim’s body into the woods. She also saw Allen remove a container of gas out of her car, but could not actually see the fire being set from where she was standing.
According to Walker, Allen was still with them when they went back to the defendant’s trailer after the murder. Walker further noted that the defendant had blood splattered all over her face. They entered through the back door and the defendant immediately removed her clothing and took a shower. After unsuccessful attempts to remove the blood from the car interior, the defendant and Walker took the vehicle to Sam Territo’s property where they stripped and discarded some of the interior, including door panels and seating. Days later they retrieved the partially stripped car and abandoned it in a Wal-Mart parking lot in Port Allen. After her arrest, Walker asked a sexual part *824 ner, Kenneth Sterling, to go to the Wal-Mart and “handle” the car.
Walker admitted that she lied to the police during interviews that took place soon after the victim’s body was discovered and her arrest, and again in March 2008. She indicated that she did not want to give the police any information because she did not want the defendant to go to jail, adding that she was also personally concerned about avoiding going to jail. When she finally came forward to provide details about the murder in November 2008, she also informed the police of the location where the victim was initially beaten and the nearby location | cohere he was hit with the car. She also escorted them to the property where the discarded portions of the vehicle’s interior were located.
Walker admitted that the State reduced the second degree murder charge against her to obstruction of justice in exchange for her testimony, as shown in the written plea agreement subsequently introduced by the defense. She nonetheless specifically stated that she came forward because she “just couldn’t hold it in anymore” and repeatedly asserted that her trial testimony was truthful. During cross-examination she again admitted to repeatedly providing statements in the past that were inconsistent with her trial testimony and sending the police on a “wild [goose] chase” as to the location of evidence, but denied beating the victim or hitting him with the car. She denied having any scratches or injuries from the night in question.
Consistent with Walker’s testimony, Sterling testified that when Walker called him after her arrest and asked him to burn her car, he did so. He stated that he poured gas on and under the vehicle and lit it with a match while it was in a Wal-Mart parking lot. Sterling noted that he initially lied to the police about setting the car on fire.
Sam Territo testified that he had known the defendant well since she was a little girl and talked to her relatively frequently. He further stated that he would more than likely recognize her voice over the telephone. The defendant’s brother worked for Territo and lived on his property in Pointe Coupee at the time of the murder. According to Territo, the defendant contacted him by phone once or twice and once in person in December 2007 regarding leaving a car on his property. The defendant told him that the car needed repairs and that someone would come and repair it. Territo agreed and the car was stored on his property |infor a period of time. Territo gave the police permission to search his property when Walker led them to that location in late November 2008.
The defendant’s mother, Mary Lee Jack, also testified as a State witness. According to her testimony, the day before she saw the news story about the victim’s death, the defendant told her that she was in trouble and that she hit someone in the head with a bat and that the person “fall out.” The defendant also mentioned a fire at Thompson Creek and that something happened to the victim. After Jack saw the news story about the victim’s death, she concluded that her conversation with her daughter was relevant and gave a statement to the police.
The victim’s first cousin, Nicole Turner, testified that when she saw the defendant while shopping in June 2007, the defendant showed her a life insurance policy in the victim’s name and stated that the victim was worth more to her dead than alive. The defendant further informed Turner that she made certain to keep up the payments on the policy.
*825 Among the cell phone records introduced by the State, it was shown that the defendant’s cell phone was used on December 1 at 10:33 p.m. in Zachary. The defendant’s cell phone was used to call Walker’s cell phone between Port Hudson and Baton Rouge starting at about 6:25 a.m. on December 2. It was used to call Walker again later that morning in Gonzales at 7:57 and 7:58 a.m., and to call Territo between 10:36 and 10:39 a.m.
The defense called Officer Harold Eden-field and Louisiana State Police Trooper Troy Magallenes as witnesses in an attempt to illicit testimony regarding possible visible scars or scratches on Walker’s face, neck, or shoulders following the victim’s murder. Officer Edenfield, who was employed by the West Feliciana Parish Detention Center, was present on December 6, 2007, when Walker was arrested and booked. Trooper Magallenes stopped Walker’s vehicle at 7:40 a.m. Hon December 2 and issued her an illegal window tint ticket. Both witnesses testified that they did not recall any scars or scratches on Walker’s face and, further, that they would have noted such an observance. Trooper Magallenes observed blood in the front and back of the vehicle being driven by Walker. When he questioned her, Walker told him that she had a fight with her boyfriend and struck him with an object that was in the vehicle. She was allowed to leave after the ticket was issued.
Defense witness Detective Terrance Miller of the East Feliciana Parish Sheriffs Office was called to the scene where the victim’s body was discovered and took photographs. Detective Miller corroborated Detective McKey’s testimony that a slip of paper with Walker’s first name and phone number was located at the scene within a few inches of the victim’s head. Detective Miller also confirmed that Walker gave prior accounts of what occurred that were inconsistent with her trial testimony. For example, he specifically confirmed that Walker initially stated that she and the victim were hit by another car while they were travelling down U.S. Highway 61 and that someone struck her and the victim with an object after they got out of the car. The defendant did not testify.
The parties to crimes are classified as principals and accessories after the fact. La. R.S. 14:23. Principals are all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. La. R.S. 14:24. Thus, a general principle of acces-sorial liability is that when two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts but also for the acts of the other. State v. Smith, 07-2028 (La.10/20/09), 23 So.3d 291, 296 (per curiam).
l12In this case, Walker clearly implicated the defendant in the murder of the victim, specifically indicating that the defendant actively participated in the brutal beating and that the defendant ran over the victim with the vehicle she was driving, both resulting in lethal injuries. Walker further testified that the defendant assisted in the burning of the victim’s body. The testimony presented by the victim’s mother as to the statements the defendant made shortly after the offense was consistent with Walker’s testimony. The jury was fully aware of the fact that Walker provided several inconsistent prior statements. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier-of-fact, is sufficient to support a factual conclusion. State v. Higgins, 03-1980 (La.4/1/05), 898 *826 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Moreover, the trier-of-fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier-of-fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a trier-of-fact’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier-of-fact does not render the evidence accepted by the trier-of-fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1st Cir.1985).
The evidence need not show that the defendant acted alone. See La. C.Cr.P. art. 14:24; Smith, 23 So.3d at 296. The jury’s verdict reflected its reasonable conclusion that the defendant actively participated in the murder of the victim herein. Accordingly, we cannot say that the jury’s determination was irrational | sunder the facts and circumstances presented to it. See Ordodi, 946 So.2d at 662. Furthermore, an appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the trier-of-fact and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). We are convinced that any rational trier-of-fact, viewing the evidence presented at trial in the light most favorable to the State, could have found the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant’s identity as the perpetrator. Due to the foregoing conclusions, assignments of error numbers one, two, and three lack merit.

ASSIGNMENT OF ERROR NUMBER FOUR

In her fourth assignment of error, the defendant contends that the trial court erred in allowing the State to present expert testimony by Detective Spence Dil-worth regarding technical aspects of cell phone calls and usage. The defendant argues that Detective Dilworth did not possess specialized knowledge regarding the interpretation and explication of cell phone records and was not qualified to testify as an expert in that field. Thus, the defendant argues that the trial court abused its discretion in allowing him to testify as an expert.
In this case, the State did not attempt to qualify Detective Dilworth as an expert witness. Therefore, he testified as a lay witness. Louisiana Code of Evidence article 701 limits a lay witness’s testimony in the form of opinions or inferences to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. A law officer may testify as to matters within 114his personal knowledge acquired through experience without first being qualified as an expert. See State v. LeBlanc, 05-0885 (La.App. 1st Cir.2/10/06), 928 So.2d 599, 603. However, only experts are allowed to give opinion testimony in areas of specialized knowledge. Under La. C.E. art. 702, “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as *827 an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness’s observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. LeBlanc, 928 So.2d at 602-03. The trial court is vested with much discretion in determining which opinion testimony shall be received into evidence as lay or expert testimony. State v. Friday, 10-2309 (La.App. 1st Cir.6/17/11), 73 So.3d 913, 922, writ denied, 11-1456 (La.4/20/12), 85 So.3d 1258.
Detective Dilworth testified that he obtained subpoenas for the defendant and Walker’s cell phone records. Defense counsel objected, arguing that the witness was not qualified to explain from a technical standpoint what the phone records meant. Before the trial court overruled the objection, Detective Dilworth explained that he easily determined how to interpret the phone records, noting that he may have called the telephone company as a precaution, but that the records were self-explanatory and included headings such as “called number” to indicate the telephone that received the call, and “dialed digits” to indicate a call that was made. As routinely done, the cell phone companies provided a spreadsheet that 11Blisted the corresponding numbers used to identify towers and the address and GPS coordinates of the tower that the cell phone used when a call was made.
We find that the trial court did not abuse its discretion in determining it is acceptable for a lay witness to testify as to the calls made and received and the tower locations for the telephone calls. A lay witness can infer and tell the jury what cell tower accepted the mobile phone signals at specific times based on that witness’s examination of cell phone records. Thus, the trial court did not err in overruling the defendant’s objection. Accordingly, assignment of error number four is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE

In her fifth assignment of error, the defendant argues that the trial court erred in not allowing her to present to the jury prior audiotaped statements by Walker and Plain. The defendant contends that Walker’s numerous recorded interviews displayed her personality and character, including a tendency to be evasive, manipulative, and to conceal her involvement. The defendant argues that she was prevented from presenting a compelling and crucial part of her defense when the trial court did not allow her to play Walker’s audiotaped statements demonstrating how her stories changed. The defendant specifically notes that initial statements by Walker and Plain indicated that the defendant was not involved in any of the criminal activities and that they changed their stories after interviews that took place on March 31, 2008. The defendant specifically contends that the change in Walker’s story was triggered by Detective McKey’s false indication that the defendant was using her and attempting to place all of the blame on her. The defendant further contends that Plain similarly changed his story after being coerced and threatened with arrest and prosecution. The ^defendant also notes that Walker negotiated a plea agreement in exchange for her testimony against the defendant.
The Sixth Amendment to the United States Constitution and Article I, *828 § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. This right includes the right to cross-examine the prosecution’s witnesses. Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Vaughn, 448 So.2d 1260, 1267 (La.1983) (on rehearing). Further, an accused also has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). Cross-examination is the primary means of testing the truthfulness of testimony. State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131, 1135.
During the trial, as on appeal, the defendant did not cite any statutory authority for the admissibility of the recorded interviews that include prior inconsistent statements. After Plain testified, defense counsel, outside of the presence of the jury, moved to play his entire police interview conducted on March 31, 2008. In ruling that the interview could not be played in its entirety, the trial court noted that Plain admitted in the presence of the jury that he lied on more than one occasion but stated that his trial testimony was truthful. The trial court ruled that it would allow two portions of the interview to be played, specifically to address Plain’s failure to recall the police telling him the defendant used him as an alibi and that he would be in prison with Derrick Todd Lee. Defense counsel noted that he could not find those particular portions of the interview. The trial court restated that the defendant would not be allowed to play the interview in its entirety and reiterated its ruling allowing the indicated portions to be played when located, noting that there would be breaks during the course of the trial that would 117allow defense counsel to search for those portions of the interview. Defense counsel argued that it would be appropriate to play the whole interview in order to present “a clear picture of this witness’s attempts to be evasive.” He further argued that the defendant was on trial for her life in a murder case, and that the entire interview was probative and important. The trial court again stated that the defendant would not be allowed to play the entire interview and noted that defense counsel would have ample time to search the interviews for the portions previously ruled admissible since the trial would not be concluded that day.
Subsequently, the trial court allowed the defendant to proffer Plain’s recorded interview. At that point, defense counsel indicated that he also wished to play all of Walker’s interviews in their entirety and the trial court delayed ruling on the request pending Walker’s testimony. After Walker testified, the trial court denied the defendant’s request to play the interviews before the jury, but allowed their proffer. The trial court noted that Walker admitted to repeatedly lying when confronted with prior inconsistent statements and further noted that law enforcement officers also testified that she lied and told them multiple stories. Additionally, the trial court also noted that nothing would be gained by playing the interviews, reiterating that the witness did not deny making any of the prior statements.
Generally, a witness’s prior inconsistent statement may be used to impeach his credibility. La. C.E. art. 607(D)(2).[3] Such evidence “is admissible *829 after the ^proponent has first fairly directed the witness’ attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.” La. C.E. art. 613. Once the foundation is sufficient for a prior inconsistent statement, the statement is subject to the balancing test of La. C.E. art. 607(D)(2), which requires the court to determine whether its probative value is “substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.” State v. Juniors, 03-2425 (La.6/29/05), 915 So.2d 291, 330, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). Moreover, the admissibility of evidence under La. C.E. art. 607 is also subject to the balancing standard of La. C.E. art. 403, which states that “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” A trial judge’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. Friday, 73 So.3d at 925.
As noted by the trial court, Plain and Walker repeatedly admitted to lying to the police and/or making specific statements that were wholly inconsistent with their trial testimony when confronted with prior inconsistent statements. If a witness admits a prior inconsistent statement, he has impeached himself by his own testimony and, thus, the prior inconsistent statement is not admissible under Article 607. State v. Savoie, 448 So.2d 129, 134 (La.App. 1st Cir.), writ denied, 449 So.2d 1345 (La.1984); State v. McGee, 07-130 (La.App. 5th Cir.6/26/07), 963 So.2d 449, 453. As further noted by the trial court, the defendant achieved all she could accomplish by having the witnesses repeatedly admit to making prior inconsistent statements. The trial testimony regarding prior inconsistent | instatements by Plain and Walker was very extensive and the witnesses were subjected to intense cross-examination regarding those prior statements. Moreover, the police officers gave specific testimony regarding the content of the prior inconsistent statements made by the witnesses. As indicated by the trial court, playing the interviews in their entirety involved the risk of undue consumption of time. Considering the foregoing, we find no abuse of discretion in the trial court’s ruling regarding the admissibility of the extrinsic evidence at issue. The fifth assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER SIX

In her sixth assignment of error, the defendant argues that the prosecution knowingly presented false and perjured testimony and evidence to the jury. The defendant specifically contends that State witnesses Walker and Plain were coached and that their pretrial recorded audio statements should have given the prosecution serious concerns as to their veracity and/or reliability. The defendant argues that the presentation of their trial testimony to the jury as state evidence raised *830 serious questions regarding intentional prosecutorial misconduct and professional ethical violations.
The record discloses no contemporaneous objection raising claims of prosecutorial misconduct. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. See La. C.E. art. 108(A)(1); La.C.Cr.P. art. 841(A). Accordingly, the defendant has waived any error based on this allegation by her failure to enter a contemporaneous objection. See State v. Sisk, 444 So.2d 315, 316 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1215 (La.1984).
Moreover, the mere fact that Walker and Plain gave prior inconsistent statements does not prove that they testified falsely at trial. Walker and Plain |antestifíed that they previously lied to the police to protect the defendant and were coming forward with the truth at trial. Thus, these witnesses provided an explanation for inconsistencies between their trial testimony and their pretrial statements. At any rate, it cannot be presumed that a prosecutor has knowledge that a witness’s answers are false simply because the witness may have made conflicting statements on a prior occasion. Thus, the defendant has shown no error or entitlement to a new trial on this basis since she has failed to show that the statements at issue are actually false or that the prosecution knew they were false and acted in collusion with the witnesses to facilitate false testimony. See United States v. O’Keefe, 128 F.3d 885, 893 (5th Cir.1997), cert. denied, 523 U.S. 1078, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998). See also State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 814, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (La.2000); State v. Williams, 338 So.2d 672, 677-78 (La.1976). Thus, we find that assignment of error number six lacks merit.
CONVICTION AND SENTENCE AFFIRMED.

. The trial court failed to wait twenty-four hours to sentence the defendant after ruling on the motion for postverdict judgment of acquittal and motion for new trial, and no waiver was given. See La.C.Cr.P. art. 873. However, since the defendant was sentenced to the mandatory sentence of life imprisonment, the failure to wait twenty-four hours after the denial of these post-trial motions was harmless error. See State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Price, 05-2514 (La.App. 1st Cir. 12/28/06), 952 So.2d 112, 123-125 (en banc), writ denied, 07-0130 (La.2/22/08), 976 So.2d 1277.

. Walker specifically testified that they went to Scenic Highway Motel to count money. The facts surrounding the money that was acquired and being counted at the motel that night were not fully introduced. However, Spence Dilworth, formerly the chief of detectives at the West Feliciana Parish Sheriff's Office, testified that his involvement in this case began with an initial call concerning $6,000.00 taken from the victim of an armed robbery at approximately 2:30 a.m. on Sunday, December 2. He ultimately concluded that the defendant, Walker, and the victim herein were involved in the robbery. According to Dilworth, police statements further in *821 dicated that the group also went to the motel to use drugs.

. Under La. C.E. art. 801(D)(1)(a), prior inconsistent statements may be admissible for their substantive or assertive value, as well as for impeachment, if the proper foundation is laid Specifically, under Article 801(D), a prior statement by a witness is not hearsay in a criminal case if the declarant testifies at the trial or hearing and is subject to cross-exami *829 nation concerning the statement and the statement is inconsistent with his testimony, provided that the proponent has first fairly directed the witness's attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement. In her appellate brief, the defendant did not cite any legal authority supporting the instant assignment of error. Furthermore, she did not seek to apply Article 801 or to lay the proper foundation for its applicability during the trial.