STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0243

STATE OF LOUISIANA

VERSUS

SIDNEY FRANK PHILLIPS, JR.

Judgment Rendered: **SEP 2 8 2023**

* * * * *

Appealed from the
32nd Judicial District Court
Parish of Terrebonne, State of Louisiana
No. 828924

The Honorable Randall L. Bethancourt, Judge Presiding

* * * * *

Joseph L. Waitz, Jr.                    Attorneys for the State of Louisiana
*District Attorney*
Jason P. Lyons
Ellen Daigle Doskey
*Assistant District Attorneys*
Houma, Louisiana


Jane L. Beebe                           Attorney for Defendant/Appellant,
Addis, Louisiana                        Sidney Frank Phillips, Jr.


* * * * *

BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.

Holdridge J. dissents in part for reasons assigned

**WOLFE, J.**

The defendant, Sidney Frank Phillips, Jr., was charged by grand jury indictment with first degree murder, a violation of La. R.S. 14:30, and pled not guilty. Following a jury trial, he was found guilty as charged by unanimous verdict. He moved for a new trial and a post-verdict judgment of acquittal, but the motions were denied. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals contending the evidence was insufficient, alleging the trial court erred in allowing improper testimony, and arguing the trial court prevented him from presenting a defense. For the following reasons, we affirm the conviction and sentence.

## FACTS

On April 18, 2021, at approximately 2:26 p.m., the victim, sixteen-year-old Tyrin Francis Levar Triggs, was shot to death on Johnson Ridge Lane in Thibodaux, which is locally known as "The Ridge." Video captured from cameras at nearby residences showed a black car with distinctive stickers in the rear window pass by Triggs on the road as he fell. The same stickers could be seen in the rear window of the defendant's vehicle—a black Mitsubishi Gallant. The defendant, a rapper known as "Sid Savage," was developed as the prime suspect on the basis of witness accounts and video surveillance.

Kristen Danae Tessier and the defendant had a child together. On the morning of the incident, between 2:00 a.m. and 2:30 a.m., the defendant went to Tessier's house in Gibson. He left at 12:30 p.m. and did not contact Tessier again until approximately 4:00 p.m., at which time he sounded scared as he told her he

2

thought he was going to jail.[1] Tessier saw the defendant with an AR-15 rifle four or five times during the year of the incident.

Thyrell Harris testified that he was standing next to Triggs when Triggs was shot. Harris testified a black car came down the street, "stopped on dead brakes," and "the AR just came out the window." Harris did not see who was driving the car but described the vehicle as older and "dirty" looking. Harris stated he heard Sid Savage's music coming from the car.

Rydelle Rounds was in his driveway on The Ridge at the time of the incident and heard three shots. Rydelle looked in the direction the shots came from and saw a black Gallant "cruising down the street nice and slow." Following the shooting, Rydelle and his brother transported Triggs to the hospital. Rydelle's house had video surveillance that captured the incident.

Rydelle testified he saw a white male wearing a dark shirt in the vehicle involved in the incident. Rydelle had previously seen the man on The Ridge and knew him as "Sid Savage." Rydelle testified the man he saw resembled "the one right there."[2] Rydelle identified photographs of the defendant's car as depicting the vehicle he saw at the time of the incident. He testified the vehicle's finish was "faded," and stated it was common for the clear coat on Mitsubishi Gallants to fade.

Rydelle's brother, Rendell Rounds, was in his driveway, cleaning out his truck, on The Ridge at the time Triggs was shot. He testified he saw "a white guy" driving the car involved in the incident, which he described as a black Mitsubishi Gallant with a faded paint job.

---

[1] Tessier denied that the defendant told her he thought he was going to jail for smoking marijuana.

[2] Presumably, the defendant in court.

3

Shirley Rounds, Rydelle and Rendell's mother, was sitting on her front porch on The Ridge at the time of the incident. She heard shots and approximately five seconds later saw a "little black car coming down the lane." She saw a white male driving the vehicle, which she described as an "old, ... rusty-looking car, black, dusty looking." She testified that photographs of the defendant's car depicted the same finish as the car she had seen, and she had seen the driver and Triggs in the vehicle on previous occasions. She did not know the driver's name but had heard the children in the area call him "Phillips." She identified the defendant in court as the driver of the vehicle she had seen after she heard the shots. Additionally, she stated she owned a 2007 Mitsubishi Gallant, and the car she saw after she heard shots looked similar to a Gallant.

Chad A. Alex, Sr., lived at 131 Al Joseph Lane on the day of the incident. His sons, Chad, Jr., and Elijah, were friends with the defendant, who lived three houses away. A little before 2:00 p.m. on the day of the incident, Alex, Sr., saw the defendant "fussing [and] arguing" with his aunt. Alex, Sr., described the defendant as "really mad," "so angry, he started jumping on his car, beating his car." Thereafter, at approximately 2:15 p.m., the defendant got into his car, put his music "up loud," and drove off.

Alex, Sr., testified that Triggs was his cousin. According to Alex, Sr., prior to the instant incident, Triggs accidentally shot Elijah in the neck, resulting in Elijah being hospitalized for almost a month. Thereafter, Triggs denied being with Elijah when he was shot. Alex, Sr., denied the "crazy rumor" that he paid the defendant to kill Triggs.

Elijah testified he and the defendant were neighbors from the time he was approximately four years old and, although the defendant was a few years older, they were friends and spent time together. Elijah denied any knowledge of the

4

defendant having an AR-style rifle. Elijah testified that on March 8, 2021, he was shot in the neck while "hang[ing] out on The Ridge" with Triggs. On approximately April 8, 2021, while still in the hospital, Elijah learned of circulating rumors that he shot himself and made a Facebook post stating that he could not believe "some n____r said I shot myself." After Elijah was discharged from the hospital, the shooting was deemed an accident. Elijah testified that he did not tell anyone that it was an accident but confirmed that his family and friends, including the defendant, were aware that it was.

Tessier testified that Elijah lived next door to the defendant on Al Joseph Lane, and the defendant cried when Elijah was shot. According to Tessier, after Elijah was shot, the defendant stated, "I am going to ride for my brother, right or wrong."

Louisiana State Police Crime Lab forensic scientist Cheryl Swearingen testified that a bullet recovered from Triggs' back had general rifling characteristics consistent with a .223 Remington or a 5.56 X 45 millimeter caliber bullet. That caliber was typically seen with AR-15-style rifles. Gunshot residue testing of the defendant's hands was negative, and his vehicle was not swabbed for gunshot residue.

Lafourche Parish Sheriff's Office (LPSO) Lieutenant Robert Mason testified he was experienced with license plate reader cameras (LPRs). He stated that at the time of the incident, LPSO had fifteen LPRs, which provided LPSO with the location of a particular license plate at a particular time and retained that information for ninety days. Lieutenant Mason assisted Terrebonne Parish deputies by providing the "reads" or "hits" that the LPRs had for the license plate on the defendant's vehicle.

5

The call detail records for the defendant's cell phone indicated a call was made at 2:35 p.m. to the defendant's best friend, Pepper Cooper, which placed the defendant on Highway 308 in Raceland, close to where Cooper was living at the time.

Terrebonne Parish Senior Detective Chris Cobb obtained information from Lieutenant Mason while investigating the incident. LPSO used that information to track the defendant as he travelled to and from Grand Isle after the incident. LPRs indicated that on the day of the incident, the defendant's vehicle passed the Raceland southbound LPR at 2:59 p.m., passed the Highway 1/Danos south LPR (on the other side of Bayou Lafourche) at 3:01 p.m., passed the Highway 1 southbound/Landeche LPR at 3:15 p.m., and passed the Bourg/Larose LPR at 6:24 p.m.[3] Further, video surveillance from Nora T. Lane (directly across from Al Joseph Lane) showed the defendant crossing a residence at 2:23 p.m. on the day of the incident. Distinctive stickers on the bottom left and bottom right of the defendant's vehicle were visible on the surveillance tape.

After being advised of his **Miranda**[4] rights, the defendant made a pretrial statement concerning the incident. He initially denied being on The Ridge on the day of the incident. However, after being advised that multiple witnesses saw him there and that his vehicle was captured on surveillance footage, the defendant stated he was on The Ridge to purchase marijuana at approximately 12:00 p.m. or 1:00 p.m. but did not shoot Triggs. The defendant claimed he was on his way to Grand Isle at the time of the incident and insisted he had done nothing wrong.

---

[3] Video surveillance from the Leeville bridge showed the defendant going into Grand Isle at 4:05 p.m.

[4] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The State and the defendant stipulated that, on July 21, 2020, an AR-15 rifle with a magazine and forty-three bullets was in the possession of the defendant but had not been in his possession since then.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number one, the defendant contends the trial court erred in denying his motions for new trial and post-verdict judgment of acquittal because the evidence was insufficient to prove his identity as the shooter. The State's theory of the case was that the defendant shot Triggs because Triggs had previously shot Elijah and thereafter denied it. The defense argued the defendant was wrongfully accused solely on the basis of the vehicle he drove. The defense claimed the police failed to investigate the possibility that the victim was killed as a result of gang activity.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV, § 1; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); see also La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Williams**, 2019-0077 (La. App. 1st Cir. 5/31/19), 2019 WL 2315340, *2 (unpublished), writ denied, 2019-01060 (La. 10/1/19), 280 So.3d 158. The **Jackson** standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence

7

excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Bessie**, 2021-1117 (La. App. 1st Cir. 4/8/22), 342 So.3d 17, 22, writ denied, 2022-00846 (La. 9/20/22), 346 So.3d 802.

First degree murder, in pertinent part, "is the killing of a human being ... [w]hen the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration ... of ... assault by drive-by shooting[.]" La. R.S. 14:30(A)(1). Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). The State bears the burden of proving those elements, along with the burden of proving the identity of the defendant as the perpetrator. **State v. Coleman**, 2017-1045 (La. App. 1st Cir. 4/13/18), 249 So.3d 872, 877, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155. When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. **Bessie**, 342 So.3d at 23.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. **State v. Dorsey**, 2010-0216 (La. 9/7/11), 74 So.3d 603, 634, cert. denied, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of

8

the witnesses, the matter is one of the evidence's weight, not its sufficiency. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **Bessie**, 342 So.3d at 23.

When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See **State v. Moten**, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). The jury heard all of the testimony and viewed all of the physical evidence presented at trial and, notwithstanding the defendant's claims of innocence, found him guilty. The State presented multiple witness accounts to support its theory that the defendant shot Triggs. Harris, who was with Triggs when he was gunned down, described the murder weapon as an "AR," described the suspect vehicle as "dirty" and older, and testified he heard the defendant's music coming from the car. Alex, Sr., testified that minutes before the shooting, the defendant drove off with his music "up loud." Rydelle Rounds identified the defendant by his street name as the person driving the black Mitsubishi Gallant that he saw moments after the shooting. At trial, Rydelle Rounds testified that pictures of the defendant's vehicle, which he noted had a "faded" finish, matched the car he had seen following the shooting. Rendell Rounds identified the suspect vehicle as a black Mitsubishi Gallant. Shirley Rounds testified that five seconds after she heard shots, she saw a car that looked similar to a Mitsubishi Gallant coming down the street. She stated that the "old, ... rusty-looking ..., black, dusty looking" car was being driven by someone the children called "Phillips." In finding the defendant guilty, the jury clearly rejected the defense's theory of misidentification. See **Moten**, 510 So.2d at 61; **State v.**

9

**Warren**, 2013-1724 (La. App. 1st Cir. 3/24/14), 2014 WL 1177926, *3 (unpublished).

The evidence in this case negates any reasonable probability of misidentification and supports the jury's finding of guilt. The defendant's alibi for the time of the killing was discredited by the witness testimony, surveillance video, LPRs, and his own phone records. In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. See **Ordodi**, 946 So.2d at 662. Considering the evidence presented at trial, the jury could have rationally concluded that the defendant was the gunman in this case.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (*per curiam*). After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of first degree murder, and the defendant's identity as the perpetrator.

This assignment of error is without merit.

10

## IMPROPER TESTIMONY

In assignment of error number two, the defendant contends the trial court erred in allowing Detective Cobb, a lay witness, to testify regarding cell site location data.

Louisiana Code of Evidence article 701 limits a lay witness's testimony in the form of opinions or inferences to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert; however, only experts are allowed to give opinion testimony in areas of specialized knowledge. **State v. Morgan**, 2012-2060 (La. App. 1st Cir. 6/7/13), 119 So.3d 817, 826-27. Under La. Code Evid. art. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness's observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. The trial court is vested with much discretion in determining which opinion testimony shall be received into evidence as lay or expert testimony. **Morgan**, 119 So.3d at 827.

Prior to trial, the defense moved to preclude the State from making any reference at trial to cell phone records and/or "pings" relating to cell phone location data. Following a hearing, the motion was denied. The defendant applied

11

to this court for supervisory relief, but the writ application was denied.[5] **State v. Phillips**, 2022-1093 (La. App. 1st Cir. 10/11/22), 2022 WL 6632516 (unpublished), writ denied, 2022-01522 (La. 10/11/22), 348 So.3d 727.

At trial, Detective Cobb testified that LPSO served a search warrant on the defendant's cell phone provider (AT&T) for the defendant's call detail records. The records provided by AT&T showed "who [was] calling, where the number was going, the date, time and also the location of the tower that the call originated [from]." LPSO determined the location of the defendant's cell phone when he made a call at 2:35 p.m. on the day of the incident by using the time of the call, the location of the cell phone tower, and plugging that information into Google Earth. Detective Cobb testified he had been a detective for six years and had performed location searches using cell phone records several times.

The defense objected that Detective Cobb was giving specialized testimony when he stated that a cell phone uses "the tower that's closest or the easiest access for your device to access[.]" The State answered that the testimony was "pretty common knowledge" and, based on his experience, Detective Cobb could testify about how he plotted the course taken by the defendant after the incident. The trial court ruled it would allow Detective Cobb to testify about what he did, which in turn, was based upon what he had done in the past.

Thereafter, the State asked Detective Cobb if the AT&T records indicated which tower a phone linked to when a call was made. Detective Cobb answered affirmatively, stating, "[t]hat's the GPS coordinates I [referred] to earlier." Detective Cobb added that LPSO could not pinpoint the position of a phone after it was linked to a tower. He explained:

> [T]he call detail records are linked to the cell phone tower. That gives us a general idea of where the device is at based off of it picking up

[5] Judge Holdridge dissented, explaining that he would grant the writ application.

that tower in the generalized location. So it does not track the device per se, it's just telling us that phone made a call and hit off of this tower. That means that phone is somewhere surrounding that tower in the general area.

There was no abuse of discretion in allowing lay opinion testimony from Detective Cobb. The testimony was non-speculative and recited facts and inferences based on records provided by the defendant's cell phone provider. A lay witness can infer and tell the jury what cell tower accepted the mobile phone signals at specific times based on that witness's examination of cell phone records. **Morgan**, 119 So.3d at 827; see also **State v. Jackson**, 2015-0809 (La. App. 4th Cir. 5/25/16), 193 So.3d 425, 438, writ denied, 2016-1294 (La. 5/26/17), 221 So.3d 79 and writ denied sub nom. **State v. Washington**, 2016-1471 (La. 6/16/17), 219 So.3d 1112 ("[the detective]" was not required to determine the location of cell towers; rather, the cell service providers provided that information to him."); compare, **State v. Saltzman**, 2013-276 (La. App. 3d Cir. 10/23/13), 128 So.3d 1060, 1106, writ denied, 2014-0011 (La. 6/13/14), 140 So.3d 1187, cert. denied, **Davis v. Louisiana**, 574 U.S. 1014, 135 S.Ct. 678, 190 L.Ed.2d 393 (2014) ("we find that the trial court in the present case did not abuse its discretion in allowing [the agent] to testify *as an expert* in the field of historical cell site analysis.[6]" (Emphasis added.)).

This assignment of error is without merit.

## RIGHT TO PRESENT A DEFENSE

In assignment of error number three, the defendant contends the trial court erred in preventing him from presenting evidence of the gang affiliations of witnesses and of other people who may have had a motive to shoot Triggs.

---

[6] Historical cell site analysis involves "the act of taking call detail records from one's cellular telephone and taking that information, which is the cell site that is utilized by the phone for service, and taking that and creating a mapped projection as to where that geographical area that that cell site covers." **Saltzman**, 128 So.3d at 1102. Thus, in contrast to Detective Cobb, the expert witness in **Saltzman** used records of calls from the cell phone to extrapolate a geographical area covered by the cell site.

13

A criminal defendant's right to present a defense is guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution. However, constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. **State v. Guillory**, 2012-0702 (La. App. 1st Cir. 12/21/12), 2012 WL 6681817, *7 (unpublished), <u>writ denied</u>, 2013-0216 (La. 8/30/13), 120 So.3d 258. "Relevant evidence" is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La. Code Evid. art. 401. The trial judge, in deciding the issue of relevancy, must determine whether the evidence bears a rational connection to the fact in issue in the case. **State v. Harris**, 2011-0779 (La. App. 1st Cir. 11/9/11), 79 So.3d 1037, 1046. Except as limited by the Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible. La. Code Evid. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, risk of misleading the jury, or by considerations of undue delay or waste of time. La. Code Evid. art. 403. Ultimately, questions of relevancy and admissibility are discretionary calls for the trial court, and its determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. **Guillory**, 2012 WL 6681817 at *7.

On the third day of trial, the State noted that in the defense's opening statement and in cross-examination, the defense suggested that the death of Triggs was the result of gang activity. The State asked the court to instruct the defense not to talk about motives by any other individual who may have wanted to kill Triggs at the time of the incident. The defense objected to the State's request,

14

arguing it had not brought up anything about Triggs being involved with gang activity and, in any event, the defendant had a right to present the defense that there were people involved in gang activity who had a motive to kill Triggs. The defense argued it had the right to present other reasonable hypotheses and the case was "circumstantial ... of who [the shooter] could have been because it wasn't explored [by law enforcement]." The court granted the State's request, and the defense objected to the ruling.

Thereafter, outside the presence of the jury, the defense proffered testimony from Elijah that his brother, Chad, Jr., had been arrested for activity with the Bag Chasin Babies (BCB) gang. Elijah denied that he was part of the Schriever Gorillas gang and did not know if other members of BCB were aware that Triggs shot him accidentally in the earlier incident. Elijah affirmed that he was present during a drive-by shooting on Al Joseph Lane but denied that the victim was part of a gang. When asked whether a friend's brother was part of a gang, Elijah stated he did not know.

The trial court did not abuse its discretion in prohibiting the proffered testimony from being presented to the jury and did not violate the defendant's right to present a defense. The fact that Chad, Jr., may have been a gang member and other members of his gang may not have been aware that Triggs accidentally shot Elijah in the earlier incident was irrelevant absent evidence that Chad, Jr., or his fellow gang members were involved in the shooting of Triggs. Any probative value of the proffered testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, risk of misleading the jury, and by considerations of undue delay and waste of time. La. Code Evid. art. 403; see **Guillory**, 2012 WL 6681817 at *11 ("the trial judge properly excluded the evidence related to the offenses of [a non-suspect] and did not thereby curtail the

15

defendant's right to present a defense. Not only is the evidence at issue irrelevant, the probative value of the evidence was substantially outweighed by the danger of confusing and misleading the jury.").

This assignment of error is without merit.

**CONVICTION AND SENTENCE AFFIRMED.**



STATE OF LOUISIANA

VERSUS

SIDNEY FRANK PHILLIPS, JR.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0243

**Holdridge, J., dissenting in part.**

I respectfully dissent from that part of the majority opinion affirming the trial court's ruling allowing Senior Detective Chris Cobb to testify regarding cell phone location data. I also dissent from that part of the majority opinion affirming the trial court's exclusion of Elijah's proffered testimony.

As I stated in my dissent from this court's action in the defendant's writ application, wherein he sought relief from the trial court's denial of his pretrial motion in limine to preclude the State from referring to cell phone records and/or "pings" relating to cell phone data at trial, only experts are allowed to give opinion testimony in areas of specialized knowledge. **State v. Phillips**, 2022-1093 (La. App. 1 Cir. 10/11/2022), 2022 WL 6632516 (unpublished) (Holdridge, J., dissenting), writ denied, 2022-01522 (La. 10/11/22), 348 So.3d 727, citing **State v. Morgan**, 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So.3d 817, 827. Under La. C.E. art. 702, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In this case, the State did not establish a proper foundation so that Detective Cobb could testify regarding historical cell site data as a lay witness. The State had to establish that Detective Cobb had 1) knowledge of how a cell phone network operates; 2) experience in going through volumes of call detail records; and 3) practical experience in geolocating a cell phone that is "attached" to a human being. See **State v. Saltzman**, 2013-276 (La. App. 3 Cir.

10/23/13), 128 So.3d 1060, 1103, writ denied, 2014-11 (La. 6/13/14), 140 So.3d 1187, cert denied, **Davis v. Louisiana,** 574 U.S. 1014, 135 S. Ct. 678, 190 L.Ed.2d 393 (2014). Without this proper foundation, in cases where cell tower mapping is used to establish the location of an accused, an expert in historical cell site analysis is required to interpret and explain the information given by the maps to the jury. See **State v. Saltzman,** 128 So.3d at 1103-06. See also **United States v. Natal,** 849 F.3d 530, 536 (2d Cir. 2017) ("testimony on how cell phone towers operate must be offered by an expert witness"). Therefore, I would find that the defendant's assignment of error number two has merit and that the trial court erred in allowing Senior Detective Cobb, a lay witness, to testify about cell site location data.

I also dissent from that part of the opinion affirming the trial court's failure to allow the proffered testimony of Elijah, as raised by the defendant in assignment of error number three. Elijah's testimony established that his brother was arrested for gang activity. It also established the possibility that gang members may have had a possible motive to kill the victim because the victim had shot Elijah. Furthermore, Elijah testified as to gang members being part of drive-by shootings in the past. The evidence was relevant, and its probative value was not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, the risk of misleading the jury, or by considerations of undue delay or a waste of time. See La. C.E. art. 403. Therefore, I would find that the defendant's assignment of error number three has merit and that the trial court abused its discretion in failing to allow Elijah to testify.

2