NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0686

STATE OF LOUISIANA

VERSUS

SHANE MICHAEL PEREZ

Decision Rendered: **MAY 2 7 2021**

* * * * * * *

APPEALED FROM THE
22nd JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA
DOCKET NUMBER 596,245, DIVISION G

HONORABLE SCOTT C. GARDNER, JUDGE

* * * * * * *

Roger W. Jordan, Jr.
New Orleans, Louisiana

Attorney for Defendant/Appellant
Shane Michael Perez

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Attorneys for Appellee
State of Louisiana

BEFORE: McDONALD, HOLDRIDGE, and PENZATO, JJ.

Holdridge J. concurs

Penzato, J. concurs (by proxy)

**McDONALD, J.**

The State charged defendant, Shane Michael Perez, by bill of information with two counts of aggravated arson, a violation of La. R.S. 14:51. He pled not guilty. The State subsequently amended the bill of information to replace count two with one count of non-consensual disclosure of a private image, a violation of La. R.S. 14:283.2. The State proceeded to trial on count one and later dismissed count two following the trial on count one. After that trial, the jury unanimously found defendant guilty as charged on count one. After the State filed a habitual offender bill, the trial court adjudicated defendant a second-felony habitual offender and sentenced him to fifteen years imprisonment at hard labor, with the first two years to be served without the benefit of parole, and the entire sentence to be served without the benefit of probation or suspension of sentence. Defendant now appeals. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

Marie Long began dating defendant in April 2000, when she was nineteen years old and he was eighteen years old; they began living together shortly thereafter. Over the next several years, the couple had a volatile relationship, during which Ms. Long obtained a total of eight protective orders against defendant arising from domestic abuse. Also during this time, the couple had three children together. As of early September 2017, Ms. Long and defendant were no longer in a relationship, but still communicated. Ms. Long and two of the couple's children then lived in Covington, Louisiana. After Ms. Long told defendant she had totaled her car in an auto accident, he helped her buy a replacement car. Defendant also wanted to resume their relationship at this time, but Ms. Long told him she was not interested.

At some time in 2017, Ms. Long's boyfriend, Carl Caughron, had moved in with her and her two children. On the evening of September 20, 2017, Ms. Long returned from work, cooked dinner, and went to bed. Several hours later, Ms. Long was awakened by her car alarm. Looking out of her bathroom window, she saw her car on fire and called 911. Her bedroom and bathroom were on the same side of her house as

2

the driveway where her car was parked. Ms. Long testified that the front of her car was about four feet from her house, and she thought it was about 4:00 or 4:30 a.m. when she was awakened. Following the car fire, Ms. Long obtained a permanent protective order against defendant.

Mr. Caughron testified that he was dating and living with Ms. Long and her two daughters in September 2017. Mr. Caughron had returned from work the evening of September 20, 2017 and went to sleep about 11:00 p.m. He was awakened around 3:00 to 3:30 a.m. to the sound of Ms. Long's car alarm. They looked outside and saw Ms. Long's Volkswagen Jetta fully engulfed in flames. He went outside and also saw a rag in his truck's gas tank, which was parked behind the Jetta. Mr. Caughron then evacuated Ms. Long and her daughters from the house and moved them about two houses away while they waited on the fire department. By the time the fire department arrived 20 minutes later, both the car and the truck were fully engulfed, and Mr. Caughron saw the house was starting to catch fire. He testified that the flames were "probably at least 20 [feet high,]" were "higher [than] the house[,]" and that "all kinds of explosions" were happening. Mr. Caughron estimated the vehicles were parked about five feet from the house. He also described fire damage to the house, with some siding being burnt off and some knocked off from the pressure of the fire hoses. They eventually were able to return to the house after the fire department determined it to be structurally sound. Mr. Caughron had never met defendant, and he ended his relationship with Ms. Long shortly after the incident. The State introduced a photograph Mr. Caughron took of the fire into evidence.

Late during the evening on September 20, 2017, witness Amy Trosclair was working with defendant at West Jefferson Hospital in Jefferson Parish, Louisiana. The two had briefly dated. Defendant asked Ms. Trosclair to ride with him to see if Ms. Long was dating someone else. They drove from the Westbank across Lake Pontchartrain to the Covington area and parked in a wooded area, from where they saw Mr. Caughron's truck parked at Ms. Long's house. Ms. Trosclair saw defendant retrieve gasoline from his truck and pour it on Ms. Long's car. Ms. Trosclair testified defendant

3

told her he was upset because "he bought this car for her and spent eight-thousand dollars of his hard earned money[.]" As they drove away, Ms. Trosclair observed a lot of smoke in the air coming from near the house. She also admitted to drinking something with vodka in it on the way back to the Westbank. Following the incident, she changed her phone number, and defendant began to harass one of her family members.

Detective Matthew Rowley of the St. Tammany Sheriff's Office testified regarding the arson investigation. Det. Rowley arrived after the fire had been extinguished. He testified that he had learned that an official fire marshal arson investigation was not conducted but that it would not have been related to his own investigation. The State introduced crime scene photographs with Det. Rowley's testimony and published them to the jury. In some of the photographs, Det. Rowley pointed out damage to the house itself, which had caught fire as a result of the vehicle fires. The photographs showed that some vinyl soffit and siding had melted or been scorched. Det. Rowley also testified that a blue or green pickup truck registered to defendant's mother had been photographed entering the Lake Pontchartrain causeway northbound at 2:37 a.m. on September 21, 2017. After he obtained search warrants, Det. Rowley's investigation revealed defendant had called Ms. Long 147 times between September 18 and September 20, the last being at about 6:00 p.m. on September 20, 2017. In an interview with defendant while he was in custody, defendant admitted he was in the Madisonville area with Ms. Trosclair and claimed they were visiting Ms. Trosclair's friend. Defendant could not provide an address or the friend's last name. He also denied setting the fires. He conceded that he was at Ms. Long's house on September 20 and claimed he tried to get Ms. Long and Mr. Caughron to come outside to talk to him. In an interview with another officer regarding the events leading to count two, defendant admitted posting the photographs of Ms. Long on her employer's Facebook page.

4

Defendant was ultimately convicted on count one. On appeal, defendant argues there is insufficient evidence to support his conviction and the trial court erred in allowing the State to introduce other crimes evidence.

## ASSIGNMENT OF ERROR NUMBER TWO: INSUFFICIENT EVIDENCE

In cases where a defendant has raised issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. When the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. *See State v. Hearold,* 603 So.2d 731, 734 (La. 1992); *State v. Smith,* 03-0917 (La. App. 1 Cir. 12/31/03), 868 So.2d 794, 798. Accordingly, we will first address defendant's second assignment of error, which challenges the sufficiency of the State's evidence. Defendant claims the State failed to show endangerment of human life was foreseeable where no one was in the vehicles when he set them on fire. The State argues that endangerment to human life was foreseeable, because defendant poured gasoline on one vehicle, inserted a rag into the gas tank of another, and set both vehicles ablaze while they were parked in a residential driveway close to an inhabited dwelling. Further, the State contends that it was foreseeable that the vehicles, while aflame, could violently explode when the flames reached the vehicles' gas tanks.

A conviction based on insufficient evidence cannot stand, as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, §2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See* La. C.Cr.P. art. 821B; *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Ordodi,* 06-0207 (La. 11/29/06), 946 So.2d 654, 660. The *Jackson* standard of review, incorporated in La. C.Cr.P. art. 821, is an objective standard for

5

testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno,* 01-2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence, and the facts reasonably inferred from the circumstantial evidence, must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Wright,* 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 487.

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely within the trier of fact's sound discretion. *State v. Thomas,* 05-2210 (La. App. 1 Cir. 6/9/06), 938 So.2d 168, 175. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, including an expert. The fact that the record contains evidence that conflicts with the testimony the trier of fact accepts does not render the testimony the trier of fact accepts insufficient. *State v. Morgan,* 12-2060 (La. App. 1 Cir. 6/7/13), 119 So.3d 817, 826.

Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered. La. R.S. 14:51A. The gravamen of aggravated arson is foreseeability that human life *might* be endangered, and, notably, not that human life actually *is* endangered. *See State v. Palermo,* 00-2488 (La. 5/31/02), 818 So.2d 745, 752; *see also State v. Williams,* 15-0699 (La. App. 1 Cir. 4/15/16), 2016 WL 1535154, *5 (noting the crime of aggravated flight from an officer requires a finding that human life *is* actually endangered as opposed to the lower burden required for the crime of aggravated obstruction of a highway showing that it was merely *foreseeable* that

6

human life *might* be endangered). The intent required for a conviction of aggravated arson is general criminal intent. *State v. Simmons,* 443 So.2d 512, 521 (La. 1983); *State v. Purvis,* 16-816 (La. App. 3 Cir. 4/12/17), 217 So.3d 470, 473. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2); *see Simmons,* 443 So.2d at 522 (finding State has burden of showing it was foreseeable that human life might be endangered, *i.e.,* when from the circumstances the danger to human life may reasonably be expected to follow from the defendant's setting fire to the structure, irrespective of any subjective desire on his part to have accomplished such a result); *State v. Schrader,* 506 So.2d 866, 874-75 (La. App. 1 Cir. 1987), *aff'd,* 518 So.2d 1024 (La. 1988) (finding defendant, as a member of the household where the fire occurred, was certainly aware that human life would be endangered by setting a fire to that structure). Though there are few cases addressing the foreseeability element in similar situations in Louisiana, the act of setting fire to a structure or vehicle located merely *adjacent* to a dwelling has been found to lead to a foreseeable risk that human life inside the dwelling might be endangered. *For example, see State v. Jones,* 52,672 (La. App. 2 Cir. 5/22/19), 273 So.3d 585, 592, *writ denied,* 19-01075 (La. 10/1/19), 280 So.3d 160 (finding sufficient evidence supported aggravated arson conviction based on: expert testimony in arson investigation that fire in van in defendant's driveway started in van's rear passenger compartment with an introduced ignition source, defendant had previously threatened to burn down the house, and it was foreseeable that human life might be endangered because defendant knew his wife and her grandson were in the house at the time he set van on fire); *State v. Qutoum,* 02-780 (La. App. 5 Cir. 1/28/03), 839 So.2d 323, 326 (finding defendant knew the victim family lived in an apartment above store to which he set fire, and, based on conversations, knew family would be in apartment at the time); *State v. Broussard,* 535 So.2d 532, 533 (La. App. 3 Cir. 1988) (finding threat to human

7

life foreseeable where defendant started a fire in utility shed located three feet from inhabited house).

Defendant does not appear to contest that he set the vehicles on fire or that he used an accelerant, only that his doing so did not create a reasonably foreseeable risk to human life inside Ms. Long's house. In any event, defendant was recorded on voicemail as threatening to set Ms. Long's car on fire and Ms. Trosclair observed him pouring gas on the car. Ms. Long and Mr. Caughron both testified at trial that the closest vehicle to the house was approximately four to five feet away. Photographs taken of the scene and published to the jury support their testimony. The photographs also support Det. Rowley's testimony that vinyl soffit pieces on the house were visibly melted and scorched from the heat and proximity of the gasoline-accelerated fire. Ms. Trosclair indicated defendant used gasoline, and this is supported by Mr. Caughron's observations that the flames were taller than the house next to which the cars were parked. The photograph taken of the fire indicates it was large and intense. Defendant, having recently been inside Ms. Long's bedroom, certainly could have known it was adjacent to the driveway.

Having carefully considered the evidence, we cannot say the jury's determination that defendant foresaw human life might be endangered when he set fire to the vehicles was irrational under the facts and circumstances presented. *See Ordodi,* 946 So.2d at 662. This assignment of error is meritless.

**ASSIGNMENT OF ERROR NUMBER ONE: OTHER CRIMES EVIDENCE**

In his first assignment of error, defendant claims the trial court erred when it allowed the State to introduce evidence of defendant's convictions for domestic abuse of the victim, as well as testimony about the conduct leading to count two. Defendant argues the introduction of these alleged bad acts was cumulative, confusing, prejudicial, and improperly led the jury to overlook the insufficiencies of the State's case to find him guilty.

The State contends that defendant failed to object to any other crimes evidence introduced and thus waived the claim on appeal. Moreover, the State contends

8

defendant's only objection pertained to the testimony of Kelly Hollern, Ms. Long's coworker, who testified regarding the photographs defendant posted on the Facebook page of Ms. Long's employer. The State notes defendant did not object to the introduction of the screenshots of the compromising photographs of the victim that he posted or to the victim's testimony regarding the same. Additionally, the State claims that defendant does not assign the denial of his objection to Ms. Hollern's testimony as error on appeal. Alternatively, the State argues the introduction of the domestic abuse evidence was proper where defendant denied committing the crime, and the evidence would tend to show defendant was the perpetrator.

At trial, evidence of defendant's history of domestic abuse against Ms. Long was introduced. A summary of that history follows.

In July 2000, a few months after their relationship began, Ms. Long and defendant got into an argument, and Ms. Long told defendant to leave. She called the police when he would not. That same evening, defendant returned, kicked in the door, and destroyed the apartment. Ms. Long called the police again, and they arrested defendant. He later pled guilty to simple battery. The couple reunited two months later while Ms. Long was pregnant with the first of their three children. In September 2000, the couple again got into an argument. Defendant demanded that Ms. Long leave the house, pulled a gun on her, and kicked her in the back. Both Ms. Long and defendant were arrested as a result, and defendant later pled guilty to disturbing the peace. In April 2002, the couple again argued and Ms. Long decided to sleep at a friend's house. Ms. Long testified that defendant came to the friend's house with the couple's infant daughter, and when she opened the door, defendant, while holding their daughter, punched her in the face. Ms. Long sat on the couch after defendant punched her. He then threw the infant on the couch and punched Ms. Long twice on her leg. Ms. Long then went to the kitchen, grabbed a knife, and stabbed him three times. Defendant and Ms. Long were both arrested following the incident. In December 2002, the two again attempted reconciliation. However, Ms. Long again broke off the relationship, and defendant threatened to kill her. Ms. Long called the police and

9

obtained a protective order. In September 2003, Ms. Long was pregnant with the couple's second child and they were living together at defendant's mother's house. One night, after Ms. Long declined to have sex with defendant, he choked her. Ms. Long did not immediately call the police, but later did file charges; defendant was arrested, and he ultimately pled guilty to simple battery.

In November 2010, Ms. Long and defendant were together with their three children. One evening, Ms. Long wanted to leave the house to get cigarettes, and defendant pushed her against the wall. After Ms. Long fled the house, defendant left a voicemail message suggesting that he would shoot the police or her children. SWAT was dispatched, he was arrested, and he pled guilty to domestic abuse battery with child endangerment. In February 2011, Ms. Long had left defendant, but he continued to contact her in violation of a protective order in place. Law enforcement secured a warrant for his arrest as a result. At trial, the State introduced certified records of defendant's prior convictions stemming from incidents with Ms. Long into evidence without objection.

In March 2017, after another argument, defendant posted several revealing photographs of Ms. Long in her undergarments on her employer's Facebook page. Ms. Long did not give defendant permission to post the photographs and was humiliated when her employer showed her the postings. After the incident, defendant led Ms. Long to believe that he had already been prosecuted for the occurrence, but it was this act that led to the State's amended bill charging defendant with non-consensual disclosure of a private image. In September 2017, after defendant helped Ms. Long buy a new car, and after she refused to resume their relationship, defendant demanded that the car be returned to him. He then called her over 100 times and left over 40 voicemail messages. In some of the messages, defendant said he was going to burn the car and assault her new boyfriend.

As an initial matter, regarding the prior convictions and protective orders against defendant stemming from his relationship with Ms. Long, the State filed a proper pretrial notice of its intent to introduce the prior convictions of domestic abuse. There

10

is nothing in the record to indicate counsel objected to the admission of the evidence. Consequently, as it pertains to the older incidents, defendant has waived this issue on appeal. *See, generally,* La. C.Cr.P. art. 841; *State v. Thibodeaux,* 16-0994 (La. 10/27/17), 227 So.3d 811, 812 *(per curiam).* As to the introduction of evidence regarding the alleged non-consensual disclosure of a private image, defense counsel did properly object to Ms. Hollern's testimony. Accordingly, we will address this claim on appeal.[1]

Generally, courts may not admit evidence of other crimes or bad acts to show defendant is a person of bad character who has acted in conformity with his bad character. *See* La. C.E. art. 404B(1). However, the State may introduce evidence of other crimes if the State establishes an independent and relevant reason, *i.e.,* to show motive, opportunity, intent, or preparation, or when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. *See* La. C.E. art. 404B(1). Even when the other crimes evidence is offered for a purpose allowed under La. C.E. art. 404B, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *State v. Rose,* 06-0402 (La. 2/22/07), 949 So.2d 1236, 1243. Moreover, the State must provide the defendant with notice that it intends to offer other crimes evidence. *Id.* Additionally, the State must prove by a preponderance of the evidence that defendant committed the other acts. *See* La. C.E. art. 1104; *Huddleston v. United States,* 485 U.S. 681, 690-91, 108 S.Ct. 1496, 1501-02, 99 L.Ed.2d 771 (1988); *State v. Brue,* 09-2281 (La. App. 1 Cir. 5/7/10), 2010 WL 1838383 *6, n.4.

Under La. C.E. art. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence

---

[1] Because we conclude the trial court properly admitted Ms. Hollern's testimony under La. C.E. art. 404B(1), we need not address whether it was also admissible under La. C.E. art. 412.4. We note that the trial court did not conduct a pre-trial hearing on the admissibility of the other crimes evidence, because such is not required by La. C.E. art. 412.4, the authority under which the trial court admitted the evidence.

11

to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. An appellate court will not disturb a trial court's ruling on the admissibility of other crimes evidence absent an abuse of discretion. *State v. Garcia,* 09-1578 (La. 11/16/12), 108 So.3d 1, 39; *State v. Jackson,* 18-0261 (La. App. 1 Cir. 11/2/18), 265 So.3d 928, 939-40.

Under La. C.E. art. 404B(1), as well as La. C.E. art. 403, the traditional balancing test of whether evidence is more probative than prejudicial, defendant does not show trial court error. Clearly, the pattern of behavior leading to the actions charged in count two fit a well-established pattern of domestic abuse by defendant directed at Ms. Long. It also goes to show that, despite counsel's argument to the contrary, the deep animus held by defendant toward Ms. Long was not a thing of the past. The trial court did not abuse its discretion by admitting evidence of the other crime as being more probative than unduly prejudicial as to deprive defendant of a fair trial. Additionally, even if the admission of Ms. Hollern's testimony was improper, the error was harmless in light of Ms. Long's and another witness's unchallenged testimony regarding Mr. Perez's posting of the subject photographs on the Facebook page of Ms. Long's employer. *See State v. Kirsh,* 15-1856 (La. App. 1 Cir. 9/20/16), 273 So.3d 1225, 1233-34. This assignment of error is meritless.

**CONVICTION AND SENTENCE AFFIRMED.**

12