369 So.2d 128 (1979)
STATE of Louisiana
v.
Troy Normand VOLK
No. 62787.
Supreme Court of Louisiana.
March 5, 1979.
Joseph T. Dalrymple, Robert L. Beck, Jr., Antoon, Dalrymple & Beck, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Ralph W. Kennedy, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
CALOGERO, Justice.[*]
Defendant, Troy Normand Volk, was convicted after a bench trial of attempted aggravated rape and was sentenced to twenty-five years imprisonment. His appeal presents twelve assignments of error for our consideration.[1]
*129 The record indicates that during the month of October, 1977, the defendant absented himself without permission from Brown's School in Austin, Texas, an institution for the mentally ill to which he was sent by a Lake County, Illinois court. During the early morning hours of October 24, 1977, he accosted a maid in a room at the Travelodge Motel in Alexandria, Louisiana. Volk pointed a gun at the woman, announced, "This is a holdup", instructed her not to scream, and assured that he would not hurt her. The woman responded that she had no money and the defendant then demanded that she remove her clothing. When the woman hesitated and attempted to dissuade him, defendant renewed his demand that the woman remove her clothing, warning, "I'm going to count to ten, if you don't take off your clothes, I'm going to kill you, but I don't want to hurt you." After the woman removed her uniform Volk admonished her to hurry and approached her, grabbing her brassiere and snatching it. A scuffle over the gun ensued, during which the woman temporarily possessed the gun and attempted to shoot Volk. The gun did not fire, she lost possession of it, and Volk ultimately struck her on the head with it to prevent her from escaping from the room. Immediately thereafter, Volk left the room and effected his escape. He was apprehended shortly thereafter by a state trooper and this prosecution ensued.
We have determined in connection with our consideration of various assignments that a remand to the trial court is required for reconsideration of the ruling holding admissible a confession made by Volk for the reason that it appears the trial judge applied the wrong burden of proof and failed to apply the correct standard in determining the confession's free and voluntary character. In the event the trial judge determines anew that the confession is admissible we require that he reconsider the twenty-five year sentence and comply with the requirements of Code of Criminal Procedure article 894.1, which mandate a statement for the record of the considerations taken into account in imposing sentence and the factual basis therefor. As will be explained hereinafter, this compliance will facilitate our review of defendant's claim of an excessive sentence, should further review be sought.
The remand to the trial court for re-examination of the issue of the admissibility of Volk's confession in light of the correct burden of proof and the appropriate standards for determination of its free and voluntary nature is especially compelled by the fact that the record reveals substantial evidence supporting the defense view that Volk's confession was not freely and voluntarily given. In preparation for the admission of the rights waiver form Volk executed and the confession he made, the state presented the testimony of the juvenile officer to whom Volk confessed. After the state announced that it had no further foundation evidence to offer on the issue of admissibility, the defense presented the testimony of a psychiatrist, Dr. Marvin Schwartz. Dr. Schwartz told the court that he had previously diagnosed Volk as a chronic schizophrenic on the basis of living with him for six months at a Chicago hospital. Schwartz testified that Volk experienced periods of decompensation and such things as hallucinations, paranoid states, disassociative states and confusional states on a transient and episodic basis but that ". . . basic defects in judgment, the inability to establish causal relationships, the poor reality testing, the tangential thinking and the withdrawal into fantasy" did tend, in his opinion based on his six months' contact, to be permanent aspects of Volk, "with very little fluctuation."
The doctor related that Volk was extremely susceptible to adult male authority figures and, prompted by a strong desire to please, would do whatever he perceived would achieve that result. The psychiatrist testified that this impulse was especially evoked by psychiatrists, social workers or probation and juvenile officers, ". . . all of whom he has been dealing with for years in Lake County, in very positive supportive *130 relationships. . . ." Asked to say whether the juvenile officer's kind treatment of Volk could have further obscured his perceptions insofar as an understanding of the ramifications of waiving his rights was concerned, and requested to comment on Volk's ability in these circumstances to rationally understand the consequences of waiver, Dr. Schwartz opined that Volk would not have understood consequences to the extent that the rights would have any meaning to him. Asked to state his opinion with regard to Volk's ability to freely and voluntarily waive his rights on the date of the confession, October 24, 1977, Dr. Schwartz, notwithstanding he had not treated the defendant for six weeks, stated that there was every reason to believe the illness was stable, rather than phasic, since the nature of Volk's illness was chronic. Therefore, it was his belief that most probably Volk's psychological state was the same as it had been at the time of their last contact.
During cross-examination by the state, Dr. Schwartz stated his belief that Volk could not understand the constitutional rights which Miranda requires the custodial interrogator to communicate, and on redirect, asked to compare in light of the existing circumstances defendant's understanding of the consequences of waiving his rights to the comprehension one would expect of a normal person his age, Schwartz characterized Volk as "[e]xtremely less able" to understand and stated: "If I had to put it in percentile I'd say less than one percent."
The following excerpts from the state's cross-examination of Dr. Schwartz summarize his views:
. . . [T]he issue is not his intellectual understanding but his mental illness. His mental illness is what prevents himthe question of whether in an abstract level, if it had no meaning to him, he could conceptually understand may be one thing. What we are dealing with here is that given the circumstances where these things are relative to what happens to him, he operates in terms of his illness, rather than appreciation of conceptual material. This is what I am saying.
Q. Well, let me ask you, if I understand you correctly, if you told him you have a right to remain silent, he would understand it at that point?
A. Yes.
Q. And if you said "Now, we'd like you to make a statement." he bubbled [Sic]?
A. That's right.
Q. But he still understood before you started that he had a right to remain silent?
A. To start with, yes.
Q. Does he understand the statement that "Anything that you say can be used against you in a court of law."?
A. I think you'd haveI don't know how it was explained. For example, his idea of a court of law in Indiana was a place where they were very good to him and the court paid for his treatment at Oaks School, and sent him to us. So the question becomes one that unless he understood what the implications were, whether he was to be tried as a child or an adult, what was going on, I'm not sure he could understand. It depends how things were done and how they were explained.
Q. So, he does have a fairly good comprehension of the English language?
A. Yes, sir. Conceptually, he could understand, if it were donebut on the other hand, to carry from that to his right not to respond, deals not only with the conceptually understanding but with the relationship to his behavior. What I am saying is, reading to him that he has a right to remain silent, doesn't mean he understands he really has the right to remain silent if someone asks him a question.
* * * * * *
Q. He could understand it and what you are saying is that it just doen't make anyjust doesn't really make any difference to him?
A. That's right. Yes, sir.

*131 Q. He can understand it?
A. Yes, sir.
Q. But it just wouldn't make any difference to him?
A. Yes, sir, that's what I'm saying. He doesn't operate in terms of things like that. He operates in terms of what people tell him to do.
Juxtaposed with Schwartz' testimony is that of Dr. Culpepper, who was called by the state to rebut the testimony of the defense witnesses. Culpepper, who was named to the sanity commission appointed by the court, had examined Volk ten days after the commission of the offense for a period of approximately one and one-half to two hours. His examination, which included an intelligence quotient test for thirty minutes of the examination period, led to his conclusion that defendant was not psychotic; rather, he determined that Volk was a mentally average person who had an antisocial personality.[2] Dr. Culpepper opined that Volk had the mental capacity to understand the rights set forth on the waiver form exhibited to him; the doctor responded negatively when asked if he perceived anything in the defendant's personality which would render him particularly susceptible to the influence of male authority figures. There is no significant area of agreement insofar as the assessments of the two psychiatrists are concerned.
Considering the seriousness of the dispute between the state and the defense regarding the voluntariness vel non of defendant's waiver and confession, the application of the proper burden of proof to the correct party assumes paramount importance. This Court has repeatedly recognized the code and statutory requirement that the state affirmatively show a confession was freely and voluntarily given, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. C.Cr.P. art. 703; R.S. 15:451. It is equally well established that the burden of proof which the prosecution bears is to establish beyond a reasonable doubt the freeness and voluntariness of the confession. State v. Glover, 343 So.2d 118 (La.1977). The Glover case recognized that in a situation where admissibility is the issue, the crucial question is ". . . whether [the defendant] suffered from a mental illness or defect which, under the circumstances, prevented his statements from being voluntary." State v. Glover, supra, at 128.
The following record excerpt reflecting the colloquy which took place at the close of evidence on the issue of admissibility engenders our doubt that the correct burden of proof was placed on the proper party:
BY THE COURT: Well, let's see, believe he has the burden of proof on it, so if he wants to go first, we'll let him.
* * * * * *
BY DEFENSE COUNSEL: Your Honor, I don't feel certain that we have the burden of proof.
* * * * * *
[M]y position [is] that the State has the burden of proof beyond a reasonable doubt under these circumstances. . . .
* * * * * *
BY THE COURT: Well, you certainly can argue that and the Court will give due consideration to it, but I am just trying to determine whether or not who's going to close. The State apparently was ready to to and I felt like it was your privilege to go first.
*132 The state and the defense argued the admissibility issue to the court; immediately thereafter the court ruled admissible the confession and the rights waiver without further reference to the burden of proof. The possibility that the court imposed upon the wrong party the burden of proving the free and voluntary nature vel non of the confession or imposed the wrong burden (for example, any burden other than proof beyond a reasonable doubt) compels us to remand this case to the district court for a determination anew on the admissibility issue insofar as that issue is affected by the free and voluntary character of Volk's confession.
In connection with this determination on remand, the district court is likewise to consider in reaching its decision whether Volk was ". . . aware not only of his rights, but also of the consequences of foregoing them, that he knew he was faced with a phase of the adversary system, and that he was aware that he was not in the presence of persons acting solely in his interest." State in the Interest of Dino, 359 So.2d 586, 591 (La.1978),[3]accord, Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694, 721 (1966).
The "totality of the circumstances" test applicable to this case (the trial of which commenced on March 13, 1978, before the effective date of Dino) requires a showing that the accused who confessed possessed an awareness of all of those realities to which Miranda specifically refers. Yet the trial court's stated reasons for ruling Volk's confession admissible indicates that there may not have been a proper consideration of these factors: "You can put it in whatever terms you want to; he can't appreciate it; he can't relate it to whatever you want to, the fact that he has a blank as to the consequences doesn't necessarily mean that what he has to say when you ask him to make a statement is not voluntary."
The power to grant a new trial is reserved to the trial judge should he determine the confession is inadmissible after considering the issue of the statement's free and voluntary nature in light of the foregoing. If the trial judge determines after again considering the issue that the confession is admissible the defendant is granted the right to appeal that determination; in the absence of such an appeal the conviction will be affirmed.[4]
The other assignment of error which focuses the court's attention on the need for remand is that which complains that the twenty-five year sentence imposed is excessive. At the time the sentence was imposed, the defense objected, urging its excessiveness under the circumstances of the case.[5] In State v. Sepulvado, 367 So.2d 762 (La.1979) we held that excessiveness is a question of law reviewable under our appellate jurisdiction. However, in the instant case, we are unable to undertake a review of the sentence to judge excessiveness. The trial judge did not in the instant case articulate the considerations he weighed and did not state the factual basis for those considerations in determining to impose the twenty-five year sentence; nor does the record reflect a consideration of the factors enumerated *133 in Article 894.1. We determined in Sepulvado, supra, that in reviewing excessiveness we would utilize the guidelines set forth in Article 894.1. In the event the confession is ruled admissible, the trial judge, in reconsidering the question of an appropriate sentence, is required to state the considerations taken into account when determining the length of the sentence to be imposed, and set forth the factual basis therefor; the factors enumerated in Article 894.1 should be addressed to facilitate this Court's review of excessiveness. The right to appeal the sentence imposed on remand is reserved to defendant.
We find all the other assignments of error wholly without merit.[6]

Decree
Accordingly, the case is remanded to the district court for proceedings in accordance with this opinion.
REMANDED.
SUMMERS, C. J., and CULPEPPER, J., dissent.
MARCUS, J., dissents in part and concurs in part and assigns reasons.
MARCUS, Justice (dissenting in part and concurring in part).
I dissent from the remand to determine anew the admissibility of defendant's confession. After hearing the conflicting testimony of the psychiatrists, the trial judge determined that defendant's confession was free and voluntary after having been advised of his Miranda rights. Hence, he admitted the confession in evidence. While the state has the burden of showing that a confession was free and voluntary and not made under the influence of fear, duress, intimidation, etc. (La.R.S. 15:451) and this showing must be closely scrutinized on appellate review in the case of a juvenile based on the totality of the circumstances, a defendant is nonetheless presumed "sane and responsible for his actions." La.R.S. 15:432. Based on the evidence presented, I am unable to say the trial judge erred in admitting the confession in evidence.
I concur in the remand for the trial judge to comply with La.Code Crim.P. art. 894.1 (sentence guidelines).
I disagree that this court has a right to review the sentence in a particular case for excessiveness. See my dissent in State v. Sepulvado, 367 So.2d 762 (La.1979).
Accordingly, I dissent in part and concur in part.
NOTES
[*] Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] The record on appeal contains fifteen assignments of error. However, three of those assignments, having been neither briefed nor argued, are considered abandoned.
[2] Defense witness, Dr. Schwartz was questioned on cross-examination about the possibility of diagnosing a latent schizophrenic as an antisocial personality, based on the similarities in symptoms. He explained that a diagnosis is not achieved "on the basis of that which is transmitted in an hour interview, but on the basis of the life experience. . . ." Schwartz explained: "Unless one lives with him and appreciates the judgmental things in real stress situations, for example, I would think one might well come with the more superficial diagnosis. This does not mean the other individual is incorrect. It merely means its a diagnosis in less depth."
[3] The defense strenuously urged the applicability of the holding in State in the Interest of Dino, supra, which required as a prerequisite to a finding of admissibility of a juvenile's confession a showing that the juvenile actually consulted with an attorney or an adult before waiving his rights, that the person consulted was interested in the juvenile's welfare, or that, if an adult other than an attorney was consulted, the adult was fully advised of the juvenile's rights. We have held, however, that Dino is to be applied only to those cases in which the trial began after June 15, 1978. State v. Collum, 365 So.2d 1272 (La.1978).
[4] In remanding the case without presently affirming or reversing the conviction, we conform to the procedure employed in State v. Simmons, 328 So.2d 149 (La.1976). See State v. Lawson, 359 So.2d 964 (La.1978).
[5] We note that by our decision this date in State v. Cox, 369 So.2d 118 (La.1979), we overruled those cases which made a formal objection urging excessiveness of the sentence a prerequisite to our appellate review of excessiveness, holding that the issue is properly presented when raised by assignment of error to this Court. See also State v. Terriault, 369 So.2d 125 (La.1979).
[6] Defendant urged on appeal eight assignments in addition to those treated in the Court's opinion. The substance of the assignments are as follows:

4. The court erred in denying defendant's motion for judgment of acquittal.
6. The court erred in refusing to sustain defendant's objection to prejudicial questioning of a defense witness by the state.
7. The court erred in overruling a defense objection to the state's inquiry of defendant's mother as to her opinion with regard to keeping defendant "off of the street."
9. The court erred in denying a defense motion for an instanter subpoena duces tecum for jail records in connection with the crossexamination of a state's witness.
10. The court erred in refusing to sustain a defense objection to the excision of portions of the defendant's confession (which referred to other criminal conduct).
11. The court erred in overruling defense objections to improper hypothetical questions propounded by the state to a defense witness.
13. There was a lack of evidence to support the court's finding of guilt.
14. The statutory scheme which denies bifurcated proceedings in cases where the alternative plea of not guilty by reason of insanity is asserted is unconstitutional.