# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-524

**STATE OF LOUISIANA**

**VERSUS**

**WILLIAM G. PERKINS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 4278-21
HONORABLE CLAYTON B. DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 6547**
**Lake Charles, LA 70606**
**(337) 436-3384**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **William G. Perkins**

**Steven C. Dwight**
**District Attorney**
**David S. Pipes**
**Hope Buford**
**Kadence Huber**
**Assistant District Attorneys**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**KYZAR, Judge.**

Defendant appeals his conviction for first degree rape. For the reasons herein, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On February 25, 2021, a Calcasieu Parish Grand Jury returned a true bill of indictment, charging Defendant, William G. Perkins, with first degree rape, in that "on or about January 17, 2021, [he] did commit first degree rape upon J.R. whose date of birth is March 24, 2006, where the anal sexual intercourse is deemed to be without lawful consent of the victim because the victim has an intelligence quotient of seventy or lower, a mental infirmity, preventing the victim from resisting the act, in violation of La.R.S. 14:42 A(6)[.]"[1] On April 5, 2021, Defendant entered a plea of not guilty.

On March 13, 2023, Defendant filed a motion to suppress evidence of a confession made during the course of the investigation following his arrest.[2] At a March 20, 2023 hearing, the trial court denied the motion just prior to the commencement of trial. Defendant objected to the ruling in open court.[3]

At trial, the testimony and evidence reflected that Defendant lived with his wife, Rhonda Perkins, the minor victim, who is his wife's grandson, and Nancy Collins, his wife's cousin. Dr. Darrell Turner Ph.D., an expert in the field of forensic psychology, testified that after examining the victim, it was his opinion based on IQ

---

[1] The initials of victim are used to protect his identity as per La.R.S. 46:1844(W).

[2] The actual motion to suppress is not filed in the record of this appeal, and the date of the filing is provided by Defendant in brief. No argument is made by either party as to the contents of the motion, and no objection is made by either party to its exclusion from the record on appeal.

[3] Due to extenuating circumstances after jury selection on March 20, 2023, the trial was recessed until April 20, 2023.

testing that the victim suffered from a "'[s]evere to profound level of mental retardation[.]'" Rhonda testified that on January 17, 2021, Ms. Collins called her while she was away from home and reported what she had observed between Defendant and the victim, which prompted her to call the DeQuincy Police Department. In the tape of that call, introduced as evidence, Rhonda reported that her cousin had caught Defendant having sex with the victim at the home where they lived, and she needed the police to go to the home to arrest Defendant. She was noticeably upset during the call and stated that her cousin was afraid. When the police arrived at the home, the initial responding officer, Officer Matthew Kellogg, entered the bedroom where Defendant was and observed Defendant and the victim in bed "face-to-face lying on their sides[]" and "embraced in each other's arms." Defendant had no shirt on, and his pants and underwear were slid down "to where the base of his penis was exposed." While handcuffing Defendant, Officer Kellogg noted "a red liquid on his rear end." He described the victim as an "emotional wreck."

DNA and other forensic evidence provided circumstantial support for the State's case but was not conclusive in and of itself.[4] Tammy Smith, a SANE nurse,[5] testified that she conducted an examination of the victim and that while he reported to "not having consensual sex with anyone in the last five days[,]" he provided "Paw Paw" as the name of his assailant and stated that "Paw Paw said, 'Don't tell them anything because it's none of their business. I'm gonna fuck you up.'" She further stated that the victim told her that Defendant "told me to go pee pee, and when I got

---

[4] A detailed recitation of the evidence is not necessary here as Defendant does not challenge the sufficiency of the evidence to sustain the verdict.

[5] SANE is the acronym for a certified Sexual Assault Nurse Examiner.

back, he laid on top of me." He also told to her that Defendant "got blood on me, and he was farting too." He further stated, "I don't want you to look at my butt. Paw Paw made the bo bo on my 'PP' with his hand."

Defendant was interviewed twice by law enforcement officers, first on January 17, and again on January 18, 2021. He denied any involvement with the victim during the first interview but confessed the next day during the second interview.

On April 20, 2023, the jury returned its unanimous verdict of guilty of the charge of first degree rape. Defendant filed for and was denied a new trial on April 25, 2023. He was sentenced to life in prison on May 19, 2023. On the same day, Defendant moved for a reconsideration of his sentence, with a generic statement in the written motion that the sentence was excessive. The motion was summarily denied. This appeal followed, wherein Defendant asserts three assignments of error, as follows:

1. The trial court erred in finding that the statements made by William Perkins were knowing and freely made and not the result of coercion, pressure, improper assurances of help, or intoxication, and further erred in denying the defense's request to suppress the statements from being admitted as evidence at trial.

2. The trial court improperly impinged upon William Perkins' right to present a defense when it denied the defense the opportunity to publish the first video recorded interview with William Perkins, which had been admitted into evidence in the State's case-in-chief but not shown to the jury.

3. The trial court erred in denying the mistrial requested by the defense following an improper inflammatory statement made by Officer Kellogg during his trial testimony.

3

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.[6]

**OPINION**

*Denial of the Motion to Suppress*

In his first assignment of error, Defendant asserts that the trial court erred in finding that the statements he made to investigating officers were knowing and freely made and not the result of coercion, pressure, improper assurances of help, or intoxication. He argues that the trial court further erred in denying the defense's request to suppress the statements from being admitted into evidence at trial. Specifically, Defendant alleges that the two statements made by him, when questioned by Major Jerry Bell and Lieutenant Doug Phillips within the first thirty-six hours following his arrest, were induced by untrue statements, threats, and promises made by State agents. Defendant asserts that this rendered any purported

_____

[6] We note that while the transcript reflects that the trial court sentenced Defendant to life in prison without the benefit of parole, the minutes of court and the Louisiana Uniform Sentencing Commitment Order signed by the trial court show that the sentence was imposed without the benefit of probation, parole, or suspension of sentence. However, La.R.S. 15:301.1(A) provides as follows:

> When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.

In accord, *State v. Hardy*, 21-105, 21-612 (La.App. 3 Cir. 7/13/22), 344 So.3d 821, *writ denied*, 22-1264 (La. 11/16/22), 349 So.3d 1001.

4

waiver of his *Miranda*[7] rights neither knowing nor voluntary and are violations of his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article 1, §§ 2 and 13 of the Louisiana Constitution. It is further urged that the statements were more prejudicial than probative and should have been excluded from evidence.[8]

> For a confession to be admissible, the state must show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; La. C.Cr.P. art. 703(D); **State v. Simmons**, 443 So.2d 512, 515 (La. 1983). This "voluntariness" determination is based on the totality of the circumstances under which the statement was given, **State v. Lewis**, 539 So.2d 1199, 1205 (La. 1989), and if the accused gave the statement while in custody, he must have first been advised of his constitutional rights and executed a knowing and intelligent waiver of those rights. **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*State v. Brown*, 16-998, p. 50 (La. 1/28/22), 347 So.3d 745, 789, *cert. denied*, __ U.S. __, 143 S.Ct. 886 (2023).

Concerning questions of whether undue coercion or inducements render a confession inadmissible, our supreme court has long since set forth the necessary analysis for appellate review:

> The United States Supreme Court has held that confessions obtained by "any direct or implied promises, however slight, [or] by the exertion of any improper influence" is involuntary and inadmissible as a matter of constitutional law. *Bram v. United States*, 168 U.S. 532, 542–543, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The rationale of *Bram* is that even slight inducements held out by a person in authority such as a police officer or prosecuting attorney may render a confession involuntary because the person accused would believe that such an authoritative person is credible and in a position to give effect to the inducement. *See* 3 Wharton's Criminal Law and Procedure, Charles E. Torcia (ed.), 1973, § 682, p. 469. A promise of immunity or freedom

---

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[8] The record on appeal does not reflect that the argument of undue prejudice was made to the trial court, and thus will not be considered on appeal. *State v. Montejo*, 06-1807, p. 22 (La. 5/11/10), 40 So.3d 952, *cert. denied*, 562 U.S. 1082, 131 S.Ct. 656 (2010).

from prosecution is a particularly powerful inducement to confess, leading one writer to state that in Louisiana, "immunity from prosecution has always been sufficient to deem a confession made in reliance thereon involuntary." 14 La.L.R. 642, 662 (1954). *See also* 3 Wharton's Criminal Law and Procedure, *supra*, § 681 at 466.

In Louisiana the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and "not made under the *influence* of fear, duress, intimidation, menaces, threats, inducements or promises." R.S. 15:451. The state has the burden of affirmatively proving that a confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises and must prove beyond a reasonable doubt that a confession was free and voluntary. R.S. 15:451, C.Cr.P. Art. 703(C), *State v. Colemen*, 369 So.2d 1286 (La.1979); *State v. Volk*, 369 So.2d 128 (La.1979); *State v. Weinberg*, 364 So.2d 964 (La.1978).

The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. *State v. Gaines*, 354 So.2d 548 (La.1978); *State v. Mullins*, 353 So.2d 243 (La.1977); *State v. Webb*, 364 So.2d 984 (La.1978).

We conclude that the trial judge, whose conclusions are entitled to great weight, did not err in ruling that the confession was involuntary.

*State v. Jackson*, 381 So.2d 485, 486–87 (La.1980) (alteration in original) (footnote omitted).

Major Bell testified at the hearing on the motion to suppress. During his testimony, the transcripts of the January 17 and January 18, 2021 interviews were introduced, as was the video recording of the second interview. The first interview took place January 17, 2023, during which Defendant was advised orally and in writing of his *Miranda* rights. The notice of rights and waiver form was introduced into evidence at the hearing. As to the January 18, 2021 interview, Defendant was read his rights and, thereafter, signed the notice and waiver form, which was also introduced into evidence.

At the conclusion of the hearing, the trial court denied the motion to suppress, orally ruling as follows:

> Well, I have reviewed the transcript and then I viewed both videos. I think it's noteworthy that -- well, first of all, the Miranda rights were freely given. There was no indication of a lack of understanding, whatsoever.
>
> And I think it's noteworthy that the confession occurred fairly quickly into the interview number 2 and without any of the prodding that was a part of interview number 1, and which is the basis primarily of the motion to suppress.
>
> So looking at the totality of the circumstances, the Court finds that the confession was voluntarily and freely given, so the motion to suppress is denied.

We first note that Defendant made no inculpatory statements as to his guilt during the January 17 interview. Defendant denied having sexual contact with the victim, and he stated that he had his clothes on the whole time, as did the victim. He did not veer from these statements during the entirety of the interview. It was only during the January 18 interview, some seventeen hours later, that Defendant admitted that he engaged in sexual conduct with the victim. He did so very early in the interview, as noted by the trial court in its reasons for denying the motion. His admission came before there was any discussion by Major Bell about letting the district attorney know of his cooperation, about praying for Defendant the previous day, or any untrue or partially true statements, as alleged by Defendant on appeal.[9] Thus, it cannot be seriously argued that Defendant confessed because of any of these

---

[9] "Courts have routinely held that a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will 'do what he can' or 'things will go easier,' will not negate the voluntary nature of a confession." *State v. Blank*, 04-204, p. 18 (La. 4/11/07), 955 So.2d 90, 108 (citing *State v. Petterway,* 403 So.2d 1157 (La.1981)). *See also State v. Turner*, 16-1841, pp. 100–101 (La. 12/5/18), 263 So.3d 337, 401-02, *cert. denied*, __ U.S. __, 140 S.Ct. 555 (2019), where an officer's statements holding himself out as a "'lifeline'" for a defendant were not a promise of immunity from the death penalty. Further, the use of "deception" as an interrogation technique has been consistently upheld. *State v. Holmes*, 06-2988 (La. 12/2/08), 5 So.3d 42.

7

alleged inducements, and it certainly cannot be concluded that there was any coercive conduct leading to the confession at that point in time. In fact, Defendant provided little else of value to the State's case after his initial admission in this interview.

As reflected in *Jackson*, a finding of the trial court regarding whether a confession is inadmissible due to alleged undue influence or inducements is entitled to great weight and will not be overturned unless there is a lack of evidence in support of the ruling. Accordingly, we find more than enough evidence presented here in support of the ruling of the trial court admitting the confessions into evidence. Thus, we find no error in that decision.

We further conclude that any error as to the admission of either of Defendant's statements in this case is harmless beyond a reasonable doubt. "[T]he erroneous admission of a confession or inculpatory statement is subject to harmless error analysis, even if the statement is involuntary" and any "error is harmless beyond a reasonable doubt if it is unimportant in relation to the whole, and the verdict rendered is surely unattributable to the error." *Brown*, 347 So.3d at 791 (citing *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991)).

Here, the other evidence was overwhelming as to Defendant's guilt. He was caught in the act by Ms. Collins, who called Rhonda, who then called 911. Officer Kellogg personally observed Defendant in a partial state of undress, with his penis exposed, in bed embracing the victim. The other forensic evidence introduced into evidence is also supportive of the conviction, though circumstantial. Accordingly, any error in the admission of the statements is harmless beyond a reasonable doubt.

8

***Denial of Right to Present a Defense***

Defendant next urges that the trial court improperly impinged upon his right to present a defense by denying him the opportunity to publish the video of his first recorded interview with law enforcement, which although admitted into evidence in the State's case-in-chief, was not shown to the jury. He asserts that while the substance of the interview was presented during Major Bell's testimony and the disk drive containing the recorded interview was offered into evidence, the State did not publish the interview to the jury. Instead, the State relied on Major Bell's testimony to summarize what transpired during the interview.

Defendant points out that during his testimony, Major Bell described Defendant's demeanor during the interview, and he stated that Defendant was adamant throughout the interview that nothing had happened between himself and the victim. During cross-examination and in response to Major Bell's testimony that Defendant cooperated during the second interview but not during the first interview, the defense requested that the video of the first interview be published to the jury. Upon the State's objection, the trial court concluded that the first interview was not relevant.

The defense argued that the best evidence of Defendant's demeanor during the interviews was the videos of the interviews themselves, and the jury had seen the video of the second interview when it was published by the State. The defense specifically referred to Major Bell's testimony that Defendant was upset during the first interview, in that he was nervous and visibly shaking. After further argument, the trial court re-affirmed its denial of Defendant's request to play the video of the first interview.

Defendant asserts that La.Code Crim.P. art. 703(G) permits a defendant, who has received an adverse ruling on a motion to suppress, to introduce "evidence during the trial concerning the circumstances surrounding the making of a confession or statement" so the jury may "determine the weight to be given the confession or statement." He asserts that because his demeanor during the two interviews was discussed extensively by Major Bell, Major Bell's credibility as to what he and Defendant said or did, as well as Defendant's overall demeanor, was very relevant to the case. He concludes that a defendant has a constitutional right to present a defense pursuant to the Eighth Amendment of the United States Constitution, La.Const. art. 1, § 16, and *State v. Gremillion*, 542 So.2d 1074 (La.1989).[10]

The trial court denied Defendant's request to publish the video of the first interview because Defendant's demeanor and emotional state during the interview were not relevant. Louisiana Code of Evidence Article 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Except as provided by the United States and Louisiana Constitutions, the Louisiana Code of Evidence, or legislation, all relevant evidence is admissible. La.Code Evid. art. 402. "Evidence which is not relevant is not admissible." *Id.* A trial "court is accorded great discretion in determining whether evidence is relevant and, absent a clear abuse of discretion, rulings on relevancy will not be disturbed on appeal." *State v. Magee*, 11-574, p. 52 (La.

---

[10] In *State v. Gremillion*, 542 So.2d 1074 (La.1989), the supreme court held that the defendant had a constitutional right to present a defense to the crime he was charged with to the jury.

9/28/12), 103 So.3d 285, 321, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56 (2013). "Absent a clear abuse of discretion, the trial judge's determinations concerning relevancy and admissibility should not be overturned." *State v. Cosey*, 97-2020, p. 13 (La. 11/28/00), 779 So.2d 675, 684, *cert. denied*, 533 U.S. 907, 121 S.Ct. 2252 (2001). Further, La.Code Evid. art. 103(A)(2) provides that it is not error to exclude "evidence unless a substantial right of the party is affected" and even then, an objection must be made by counsel providing the substance of the evidence to the trial court. While Defendant objected and informed the trial court of the substance of the evidence sought to be published, the trial court's ruling disallowing the publication did not deprive him of a substantial right under these circumstances and was not an abuse its discretion. Defendant did not confess in the initial interview. While relevant in that he denied involvement, this was made known to the jury. His demeanor and emotional state were known to the jury. Anything further was either not relevant or cumulative at most. Further, failure to allow the video was harmless error at best.

> Under La.C.Cr.P. art. 921, a judgment or ruling "shall not be reversed . . . because of any error . . . which does not affect substantial rights of the accused." In *State v. Gibson*, 391 So.2d 421 (La. 1980), this court adopted the test for "harmless error," as stated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under that test, the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence "might have contributed to the conviction." Furthermore, the error must be "harmless beyond a reasonable doubt." *Gibson*, 391 So.2d at 427.

*State v. Young*, 20-1041, pp. 7–8 (La. 5/13/21), 320 So.3d 356, 361 (alterations in original).

Further, in *Magee*, 103 So.3d at 318, the Louisiana Supreme Court stated in further detail the application of the harmless error rule to evidentiary rulings of the trial courts:

Nevertheless, a trial error does not provide grounds for reversal of a defendant's conviction and sentence unless it affects substantial rights of the accused. *See* La.C.Cr.P. art. 921; *State v. Johnson*, 94–1379, pp. 16–17 (La.11/27/95), 664 So.2d 94, 101–02. The test is whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 22–23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *State v. Green*, 493 So.2d 1178, 1185 (La.1986). The reviewing court must find the verdict actually rendered by this jury was surely unattributable to the error. *Johnson*, 94–1379 at 18, 664 So.2d at 101–02; *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). In this case, the record is replete with evidence leading to this conclusion.

Here, the denial of Defendant's request to publish the video of the first interview to the jury surely did not lead to his conviction. His demeanor in the interview was discussed in testimony on direct examination and probed on cross examination. Defendant denied any sexual involvement with the victim in the first interview, leading Major Bell to state that based on the evidence known to him, Defendant was not being cooperative. Defendant was found in bed with the victim in a state of undress, with other evidentiary indications of sexual activity. Whether he was cooperative or not, or whether he was distraught, were not serious issues affecting guilt or innocence, but these factors were still made known and argued to the jury. Defendant totally denied any sexual involvement with the victim in the first interview, and this fact was clearly made known to the jury. Accordingly, any error by the trial court in denying the publication of the video to the jury was harmless beyond a reasonable doubt. Accordingly, Defendant's claim that the conviction should be reversed because of the denial of the publication of this evidence is without merit.

### *Denial of Motion for Mistrial: Officer Kellogg's Testimony*

In his third assignment of error, Defendant asserts that the trial court erred in denying his request for a mistrial following inflammatory comments made by Officer Kellogg during his testimony for the State. More specifically, Defendant argues that Officer Kellogg made a statement within the first moments of his testimony that was improper and highly prejudicial. Officer Kellogg claimed that he smelled "fecal matter" when he entered Defendant's home, upon which he concluded that "anal intercourse" had occurred. The defense immediately moved for a mistrial, which the trial court denied. Defendant asserts that Officer Kellogg's opinion statement was highly prejudicial and without basis. He claims that pursuant to La.Code Crim.P. art. 775, the ruling on the objection denying the mistrial constitutes a prejudicial error.

During Officer Kellogg's testimony, the following complained of colloquy occurred:

Q.    And at this point did you notice anything about the residence that stood out to you?

A.    Yes, ma'am. There was a very apparent fecal matter odor, you could say, like a very distinguishable smell.

Q.    Okay. So we don't hear that every day.

A.    Yes, ma'am.

Q.    So let's talk about that. When you say, "Fecal odor smell," how do you know that? Why do you say that?

A.    Due to my training and experience in the correctional field, I know it as anal intercourse is what the smell is.

MR. CASANAVE: Excuse me, Your Honor. I'm going to object. This man is not an expert and that's clearly not a normal opinion.

THE COURT: I'm sorry. What was your answer again?

13

MR. CASANAVE: Your Honor –

A.    Due to my training and experience as a correctional officer it appeared to be the smell of anal intercourse.

THE COURT: Oh, okay.

The defense objected, first on the basis of a lack of foundation for the testimony, arguing that the witness was not an expert and the testimony was not "a normal opinion." He then moved for a mistrial. After hearing arguments, the trial court ruled that a further foundation was needed before a final decision as to the testimony was possible. Thereafter, Officer Kellogg testified that he had worked as a correctional officer at Phelps Correctional Institute for two years and had supervised a unit with over four hundred inmates. Thus, he based his experience of catching numerous inmates engaged in anal intercourse as his reason for making his earlier statements.

Officer Kellogg then testified, as recited earlier, that when he entered the bedroom where Defendant and the victim were located, he found them in bed, lying on their sides, and facing each other with their arms around each other. Defendant's pants were down below his waist and his genitals were exposed, and he had a red substance on his rear end. The victim was described as being an emotional wreck.

We first note that this is not a claim based on the denial of a motion for a mandatory mistrial pursuant to La.Code Crim.P. art. 770, when a court officer or official makes a statement referring to "[r]ace, religion, color or national origin," inadmissible other crimes evidence, "the failure of the defendant to testify in his own defense[,]" or "[t]he refusal of the judge to direct a verdict." The claim here is based on La.Code Crim.P. art 775, which we refer to as a discretionary mistrial. Louisiana Code of Criminal Procedure Article 775 provides as follows:

14

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;
>
> (5) It is physically impossible to proceed with the trial in conformity with law; or
>
> (6) False statements of a juror on voir dire prevent a fair trial.
>
> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

The question here is whether the trial court abused its discretion in denying the motion for a mistrial because of the statements made by Officer Kellogg. The only ground for a mistrial that is arguable here is that the officer's statements amount to "prejudicial conduct in . . . the courtroom" that "makes it impossible for the defendant to obtain a fair trial[.]" *Id.*

> When prejudicial conduct inside the courtroom makes it impossible for a defendant to obtain a fair trial, a mistrial may be granted. La.Code Crim.P. art. 775. However, the determination in that regard rests within the sound discretion of the trial judge, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Mistrial should be ordered only where prejudice suffered by the defendant has deprived him of any reasonable expectation of a fair trial. *State v. Hopkins*, 626 So.2d 820 (La.App. 2 Cir.1993), citing *State v. Smith*, 433 So.2d 688 (La.1983).

*State v. Green*, 98-1388, p. 9 (La.App. 3 Cir. 3/31/99), 735 So.2d 723, 729, *writ denied*, 00-2904 (La. 8/24/01), 795 So.2d 323.

> As a general matter, mistrial is a drastic remedy that should only be declared upon a clear showing of prejudice by the defendant; a mere possibility of prejudice is not sufficient. In addition, a district court

judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. **State v. Ducre**, 2001–2778 (La. 9/13/02), 827 So.2d 1120, 1120 (per curiam). A reviewing court should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused. See La. Code Crim. P. art. 921.

*State v. Caminita*, 16-121, p. 7 (La.App. 1 Cir. 9/16/16), 203 So.3d 1100, 1106, *writ denied*, 16-2045 (La. 9/6/17), 224 So.3d 988.

In ruling on the motion for a mistrial, the trial court stated as follows:

I think it's appropriate lay opinion based on his experience, not necessarily training. I don't think he trained, but he supported his recognition of the smell based on his experience as a corrections officer.

Certainly the foundation should have been laid before he made the statement, but that's an objection to lack of foundation; but I certainly understand also follow-up basis [sic] to move for a mistrial, but I agree it doesn't rise to that level.

Plus, he has supported a lay opinion, and lay opinions, in certain circumstances, are admissible; and I find that it is so in this case. Thank you.

We find no abuse of the trial court's broad discretion in its denial of the motion for a mistrial given the facts of this case. Our review of the transcript of Officer Kellogg's testimony shows that he did lay a proper foundation for the testimony by providing details of his work as a correctional officer and his experience in dealing with the issue of anal intercourse while working in that capacity. Further, La.Code Evid. art. 701 provides that a lay witness may provide testimony in the form of opinions or inferences so long as the testimony is limited to those opinions or inferences which are "[r]ationally based on the perception of the witness[]" and "[h]elpful to a clear understanding of his testimony or the determination of a fact in issue." "A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert; however, only

16

experts are allowed to give opinion testimony in areas of specialized knowledge."

*State v. Phillips*, 23-243, p. 11 (La.App. 1 Cir. 9/28/23), 376 So.3d 880, 887.

> A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness's observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. [*State v.*] *LeBlanc*, [05-885 (La.App. 1 Cir. 2/10/06),] 928 So.2d [599,] 602–03.

*State v. Morgan*, 12-2060, p. 14 (La.App. 1 Cir. 6/7/13), 119 So.3d 817, 827.

Here, Officer Kellogg's testimony of the smells he encountered and his relation of those smells to his experience as a correctional officer were in fact based on his perceptions and his inferences from those perceptions. "The trial court is vested with much discretion in determining which opinion testimony shall be received into evidence as lay or expert testimony." *Id.* Here, there was no abuse of that discretion; therefore, we need not address whether an erroneous admission was prejudicial to Defendant. Thus, we find that the trial court did not err in denying the motion for mistrial on the basis of the lay opinion of Officer Kellogg.

## DECREE

Defendant's conviction and sentence for the offense of first degree rape are affirmed.

**AFFIRMED.**